Martin v. Orndorff.

## MARTIN V. ORNDORFF.

1. **Practice: EVIDENCE USED IN FORMER TRIAL.** It is error to permit counsel to read and comment upon, as a part of his argument to the jury, the minutes of the evidence taken at a former trial between the same parties.

2. **Contract: EFFECT OF ASSIGNMENT.** Where a contract for the sale and delivery of personal property is assigned by the vendee to a third party, the vendor may, in the absence of instructions or stipulations to the contrary, deliver the property to the assignee, and hold the assignor responsible therefor according to the terms of his original undertaking.

*Appeal from Des Moines District Court.*

WEDNESDAY, JULY 3.

THE petition claims a balance of over seven hundred dollars for ninety-six head of steers sold and delivered to defendant, and for feed and care of the same. The contract (in writing) was made in March, 1863, and the steers were to be delivered July 1 of the same year. The answer admits the contract, but denies the delivery; averring, in substance, that defendant assigned the contract to one McPherson, of Chicago; that plaintiff recognized the said McPherson as the party liable to him, and, without defendant's knowledge or consent, delivered the cattle to him; refused to recognize defendant or his rights, whereby defendant was discharged, etc. Trial, and verdict for plaintiff, and defendant appeals. For the questions made, and further facts, see the opinion.

*J. C. & B. J. Hall* for the appellant.

*Charles H. Phelps* and *Tracy & Newman* for the appellee.

Martin v. Orndorff.

Wright, J.—This cause was before us in April 1866 (20 Iowa, 217), and was reversed because the verdict in defendant's favor was against the evidence.

1. Practice: evidence used in former trial.

On the second trial (now before us for review), the record discloses that after the evidence had been introduced, and after plaintiff's counsel had entered upon his argument, " he commenced reading the minutes of the evidence taken at the previous trial, and which was not introduced in evidence, and to compare that with the evidence taken at this trial, to which defendant objected; but the court permitted the reading as a part of the counsels' argument, and the same was so read and commented upon to the jury; to all of which defendant excepted."

That this was error we entertain no doubt. Counsel had no more right to thus use this testimony, than though it had been taken in some other case between different parties. If he had offered it as evidence, it is clear that it would not have been admissible, except to contradict or impeach, and not then, until the proper foundation was laid, and the reading of it as a part of the argument, so styled, after all opportunity for explanation had passed, was even more objectionable. Such a practice would overturn all rules governing the admission of testimony; for any and every thing could, upon the same principle, be read as argument, and yet have all the weight and influence of evidence. Or, if not such weight, there is thereby thrown into the jury box, improperly and irregularly, matters with which they have nothing to do; which can only tend to confuse and mislead, and that to the manifest prejudice of parties.

The only doubt as to this part of the case grows out of the suggestion that, as the jury were instructed not to " consider any thing read from the minutes of the evidence at the former trial," therefore the error is one without

prejudice. After giving to the subject, however, our best thought, we cannot believe it would be safe to tolerate such a practice. Why it was allowed to be read, if not pertinent to the case and entitled to the consideration of the jury, we cannot imagine. And yet, if satisfied that the verdict was so clearly right that this could not have reasonably affected the result, we should not, for this reason, reverse the judgment. The testimony, however, is voluminous. The case was closely contested upon the facts, and under the peculiar circumstances (made the more manifest by reference to the previous opinion in this case, and the ground upon which the reversal was based), we can readily see how much influence the course pursued by plaintiff's counsel very reasonably and even necessarily had upon the verdict; we therefore deem it the safer and better course to hold that it was an error of prejudice, and to check and disapprove a practice to which we have witnessed an occasional tendency, and which if indulged in countenances a departure from long and well-settled rules. Upon this subject see *State* v. *Shannahan*, present term; *Morrison* v. *Myers*, 11 Iowa, 538; *Samuels* v. *Griffith*, 13 Id., 103.

II. The other errors assigned relate to the giving and refusal of certain instructions. These are numerous and 2. CONTRACT: lengthy, covering some fourteen pages of the effect of assignment. transcript. Without examining them in detail we shall content ourselves with stating the law applicable to the facts as claimed by the respective parties.

While defendant had the right to assign the contract to McPherson, and while such assignment might carry to the assignee the rights of the assignor, it would by no means follow therefrom that plaintiff was bound to look to McPherson for his pay. In other words it would not be true that plaintiff was thereby bound to " look to said assignee in all respects, and upon precisely

the same terms and conditions as he would have done to the assignor if the contract had not been assigned." One party to a contract cannot thus shift or throw off his liability, nor make the other the involuntary creditor of a third person.

If plaintiff delivered the cattle to McPherson, or his agent, at defendant's request, then this was a delivery to defendant, and he would be liable. If plaintiff released defendant and accepted McPherson as his debtor, or agreed to look to him for his pay, then he cannot recover. Or, if he was only to surrender the cattle to McPherson when he received his pay from him, and in violation of defendant's instruction in this respect, parted with his cattle, then the loss, if any, should fall upon plaintiff, and not on defendant. If, however, he was to deliver the cattle to McPherson, and nothing was said as to payment, then, in absence of fraud or collusion, plaintiff might so deliver without payment, and look to defendant for his money; or, in other words, if defendant assigned the contract to McPherson, and directed plaintiff to deliver the cattle to such assignee, the plaintiff was not bound to hold them until they were paid for, but, in the absence of instructions to hold until payment, plaintiff might deliver to the assignee and hold defendant liable. Plaintiff had a right to presume that defendant had protected himself or properly guarded his own rights; and, in the absence of instructions to the contrary, a delivery without prepayment would not discharge defendant.

Plaintiff was also bound to deliver the cattle according to his contract. If, however, the mode, time or place was changed with the defendant's consent, then a delivery accordingly would bind defendant the same as a compliance with the original contract. An arrangement, however, between plaintiff and McPherson, as to the time and place of delivery, prejudicial to defendant's interest,

would not bind him. And, after all, the question is, was there a delivery either to defendant, as agent of McPherson, or any other one at defendant's request? Did plaintiff release defendant, and agree to look to McPherson? or was the real transaction, that defendant sold to McPherson, leaving plaintiff to deliver to him without change of his liability as fixed by his contract?

With this brief exposition of the law governing this controversy, there should reasonably be no · trouble on the retrial. Because the court erred in the matter first discussed in this opinion, the judgment below is reversed and the cause remanded.

Reversed.