■Graves, J.:
Defendant in error recovered judgment in the superior court of Detroit in an action for libel, and plaintiff in error complains ■of various proceedings at the trial.
Defendant in error was a lawyer in practice in Detroit. He was a single man. In the spring of 1875 he was elected circuit judge of Wayne county, and in the fall thereafter was appointed to fill a vacancy caused by the resignation of Judge Patchin. In 1873 plaintiff in error began publishing the newspaper called the “Evening News,” and has continued the publication since that time. In 1875 *the paper had a large daily circulation and the news items of each issue averaged some two hundred. The parties were not personally acquainted, but the paper opposed the election of defendant in error and supported another gentleman, and during the canvass some intemperate articles were published. Some time in the fall after the election’ one Hobbins filed a bill in the superior court to obtain a divorce from his wife, and among other charges in the bill against her, alleged that she had' been guilty of adultery with defendant in error.
Almost immediately after this bill was placed on file, a reporter and gatherer of local news for the paper got access to the bill, and with the help of the city editor prepared an article covering this charge in Robbins’ bill, and caused it to be published in the paper. This occurred on the 7th of December. This article is the libel complained of. The action was commenced the next day. Plaintiff in error seems not to have been personally privy to the concoction or publication of the article, and was not aware of it in fact until his arrest in the action the next day.
It was claimed by plaintiff in error that he had no personal *362 agency in the publication; that he bore no malice against defendant in error; that the subject of the publication, being a proceeding in a court of justice, was within the circle of privilege, and that in fact the article complained of was entitled to immunity on the ground of privilege.
Defendant in error claimed that he could prove the existence of actual malice. He did not deny that the subject of the article was within the scope of privilege, but insisted that the privilege was abused, and therefore that the article was entitled to no immunity on the score of privilege. He also insisted that the paper was and had been conducted with gross negligence and was notoriously addicted to libeling. There was no pretense that the charge in Robbins’ bill which implicated defendant in error was true.
A great many questions were raised in the progress of *the trial, but some of them have not been argued, and others still cannot, as the case is shaped and as it appears to the court, be definitely examined.
There are some important matters, however, which demand full consideration.
The first in the order of proceeding at the trial seems naturally to call for attention first.
It relates to the course the counsel for defendant in error was permitted to pursue, against repeated objections, in opening the case to the court and jury.
He declared it to be his purpose, as part of his, opening, to read at length before the-jury a series of articles published in the newspaper during the course of several months and commencing in the spring of 1875 and running until some time after the appearance of publication in suit.
And the first group suggested consisted of articles from the 19th of March to the 6th of December, and none of which referred to defendant in error. The reading of them was objected to on the ground that neither of them would be relevant or competent if regularly offered as evidence under the issue. Counsel for defendant in error then stated that he proposed to read such articles as in good faith he should offer in evidence, and he would read them because he could not remem *363 ber their contents. The court thereupon ruled that he might read in his opening such articles as he claimed to be libelous, and which had been afterwards retracted.
About twenty articles, not relating to defendant in error, and running through the period before indicated, were then read to the jury as part of the opening. An exception was taken to each. They were calculated from their character to influence the minds of the jurors against plaintiff in error. The counsel for defendant in error then offered to read at length, as part of his opening, a series of articles published the spring before the publication charged as libelous, concerning the defendant in error when running for the office of circuit judge.
*This was objected to on the ground that the articles did not tend to show actual malice, and would not be competent if offered as evidence. Counsel for defendant in error then explained that he did not propose to then read them as evidence to show malice, but to. read such as he expected to offer and prove afterwards, and such as when put in evidence would tend to show malice towards defendant in .error. The court overruled the objection and allowed counsel to read as he proposed. He then read, as part of his opening to the jury, five articles he claimed tended to show actual malice by plaintiff in error against defendant in error. They bore date March 12th, March 22d, March 29th, March 31st, and April 3d, 1875.
The counsel for defendant in error then proposed to read at length, as part of his opening and not as evidence, another series of articles published after the libel.
This was objected to on the ground that the articles would not be competent or admissible if offered as evidence. They all referred to the alleged libelous article and the legal proceedings growing out of it.
The objection was overruled, and the counsel then read before the jury, as part of his opening statement, an article dated December 8th, entitled “Another Libel Suit,” etc.; two articles of December 9th, one speaking of Mr. Penniman’s sympathy for Judge Reilly, and the other having a heading *364 beginning “Where the Malice Lies; ” one article dated December 10th, concerning attendance of defendant in error at Justice Harbaugh’s court to make complaints, and one of December 11th, headed “More Contemptible Malice.” It does not appear by the record that a letter in it from Mr. Penniman to the “News” was read. The opening statement having been allowed to embrace the reading in full of all these publications, and having been brought to a close, the counsel for defendant in error proceeded to offer evidence. None had yet been received, and although the plaintiff in error had not been able to prevent the reading of the publications to the jury, he was still not *able to meet them as evidence, for any purpose or in any way.
They were lodged in the jurors’ minds as matters in the cause they were entitled to receive, but not through the channel the law has made for the conveyance of evidence, or at the stage of proceeding proper for submitting evidence. They were matters which could not fail, when so presented, to prepossess the jury unfavorably against the plaintiff in error!' Confining attention now to this branch of the case, it appears from the record, that of the series of publications not relating to defendant in error, and permitted to be read at length in the opening statement, on the pledge that they would be after-wards offered in good faith as evidence, five were not even offered as evidence at all at any stage of the trial, and as to one other the record is contradictory; some ten or a dozen or more, the record being ambiguous as to a few, were not offered except upon the rebutting case, and were then rejected by the court; and the residue of 'this list, being five or six, were reserved until the plaintiff in error had rested his defense, and were then offered and admitted as rebutting evidence.
Of the series published in the spring of lS^, concerning the candidacy of defendant in error as circuit judge, and which were read at length in the opening, on the avowal of counsel’s belief that they tended to show actual malice by plaintiff in error against defendant in error, and would be offered in evidence for that purpose, not one was offered during the making out the case in chief. They were held back until the plaintiff *365 in error had rested, and were then tendered as rebutting evidence. All were excluded. There were five in this group.
Of the set published after the appearance of the alleged libel, five were given in evidence by the defendant in error to show actual malice, and they were so given, but against objection, as part of his case in chief. The letter in the record from Penniman to the “News” was offered and excluded. Besides these and the article counted on, no *other publications were tendered in evidence before the
plaintiff in error rested his defense, except four, and these had not been read at all, or, so far as appears, even referred to in the opening statement. One of them spoke of the existence of a ring to break down the paper, and among other things, alleged that defendant in error was aware the paper had not libeled him. Another under the date of July 27th spoke of Wah-Hap, a Chinese laundryman, as having left with clothing belonging to his customers, and this was followed by one on the next day contradicting it.
The remaining article of this set was published under date of January 10, 1876. It embraced an original heading and purported to embody an article copied from the editorial columns of the “Chicago Evening Journal,” concerning the present action for libel, with comments upon its origin, etc.
When the judge came to charge the jury, he referred to the course which he had permitted in respect to the opening statement, and observed, “Mr. Griffin in his opening read several articles which at the trial were finally excluded. These should also be withdrawn from your consideration and laid out of view in your deliberations upon the case.”
No further reference was made to the subject of the opening statement, and no caution whatever was given concerning the articles which had been read at length by permission of the court against objection, but which had not even been offered in evidence at all.
The question is, whether the practice which was here allowed in the opening address was correct, and if not, whether the advice quoted from the charge cured the error, and in case it *366 did not, then whether it is competent for this court to revise the proceedings.
The trial judge must always have a very large discretion in controlling and managing the routine proceedings at the trial, and it is not necessary to specify the matters to which such discretion extends. It applies beyond doubt to the addresses of counsel as well as to other incidents. But it must be a reasonable, a legal discretion, and whether it *be so or not must depend upon the nature of the proceeding on which it is exercised, the way it is exercised and the special circumstances under which it is exercised. It can never be intended that a trial judge has purposely gone astray in dealing with matters within the category of discretionary proceedings, and unless it turns out that he has not merely misstepped, but has departed widely and injuriously, an appellate court will not re-examine. It will not do it when there is no better reason than its own opinion that the course actually taken was not as wise or sensible or orderly as another would have been. For example, if all the articles allowed to be read in the opening statement had been afterwards given in evidence, their reading in the opening, however contrary to settled practice, might not have offered any thing proper for consideration here. Questions concerning their admissibility would fall under another head. But where it is manifest the trial judge has fallen into a serious mistalse, — one likely to have hurt a party, — an error mentioned in the books as an abuse of discretion, — this court is bound to take cognizance, or disregard its constitutional duty of supervision.
It is a chief duty of the trial judge to secure fair play to litigants, and so far as practicable to shape the order and course of proceedings in such a way that neither party will be put to a disadvantage not due to his case or its mode of management by his counsel. The rules of the court, and what is called the course of the court, have their origin in the pur-pose to secure fairness in legal controversies, and the order of business and the regulated succession of steps at trials have the same object.
The rule (62) ordained by this court for the circuit courts *367 in regard to an opening statement, is especially meant to guard against surprise and deception and to promote fairness. And when it declares that “ it shall he the duty of the plaintiff’s counsel, before offering evidence to support the issue on his part,-to make a full-and fair statement of his case and of the facts which he expects to prove,” it ^indicates very distinctly the extent of both right and duty. • It draws a line between “evidence” and “facts,” and contemplates a “fair” statement of the “facts” expected to be ■“proved” before putting in the testimony or “evidence” by which these “facts” are expected to be “proved.” Neither the nature of the proceeding, nor that fairness it is intended to promote, nor the plain meaning of the rule, gives any sanction to the claim that in this opening statement the plaintiff’s counsel may read at length to the jury any documentary matter he may assert his intention of subsequently offering as evidence. But the position taken in this cause involves the assertion of the right to fill up the opening statement with any depositions on file and the whole of oral statements of expected witnesses, without regard to objections to admissibility as evidence. Surely it cannot require much thought to decide against the reasonableness and fairness of such a practice.
The text books in this country which deal with the subject are distinctly agreed concerning the end and scope of this opening address. They all represent it as a proceeding prefatory to putting in evidence, and as one practically necessary to make an advance exhibit of the legal nature of the controversy and its salient peculiarities, and enable the judge, jury and opposing counsel to apprehend the necessities of the plaintiff ’s case and correctly understand the drift and bearing of each step and each offer of proof as it shall occur subsequently. And considering that its office is to afford preliminary explanation, that it is to precede proofs and precede controversy before the jury, and is not to embody or convey proof or prepossess the jury, they unite in substantially denying the right to make use of it to get before the jury a detail of the testimony expected to be offered, and especially any not positively entitled to be introduced, and deny the right to use it as a *368 cover for any topics not fairly pertinent. A brief summary or outline of the substance of the evidence intended to be offered, with requisite clear and concise explanations, are considered proper. But *a relation of expected oral testimony at length, or a reading of expected documentary proofs at large, or any other course fitted to mislead the triers, should not be tolerated. Of course there may be cases and instances where a statement of the evidence itself, or a reading of a paper, may be convenient and harmless. Such, however, must be exceptional, and not within the-spirit of the general requirement. — Greenes Prac., § Bur-rill’s Pr., Vol. 1, p. 234; Waite’s Pr., Vol. 3, p. 86; Tiff. & Smith N. Y. Pr., Vol. 1, p. 553; Puterbaugh’s 111. Plead, and Prac., 2d ed-, 5S9; Bouvier’s Inst., 333, 334; see also 1 Arch-bold Pr., 191; 3 Chitty’s Gen. Prac., 878, et seq.; 2 Broom & Hadley Com., Am. ed., 264, 265; Ayrault v. Chamberlain, 33 Barb., 229.
The course in England is not the same as here, as is well known, but even there the claim made by counsel for defend;ant in error would not be sanctioned. In Darby v. Ousely, a civil action for libel, and one which received much attention in court, Chief Baron Pollock observed, with the apparent approbation of all the judges, that “it is the business of a judge to see that counsel shall not state what he cannot prove, and for this purpose he has always the right to ask counsel if he means to prove what he is stating.” — 36 E. L. & E., 518, 525; In the case before us, the ground taken is, that counsel for plaintiff may first put before the jury whatever he claims-to be admissible as testimony, and leave the question of its admissibility to be decided afterwards, and from time to time during the progress of the trial, if decided at all. And it so happens that a part of the matter which was introduced on this theory was left without having its admissibility as evidence passed upon in any way or at any time.
The courts have usually been very firm in confining counsel within proper bounds and in guarding jurors against unfair and irregular acts and endeavors, and parties have been deprived of their verdicts upon evidence merely indicating; *369 the operation of influences about the outskirts of the *trial. It has been many times ruled that counsel in arguing may not seek to influence the jurors by reference to matters in the nature of evidence not in proof before them, and that the trial judge should promptly repress the attempt as something reprehensible. — Bullock v. Smith, 15 Ga., 395; Berry v. State, 10 Id., 511; Mitchum v. State, 11 Id., 615; Dickerson v. Burke, 25 Id., 225; Read v. State, 2 Ind., 438; Tucker v. Henniker, 41 N. H., 317. Again, it has been decided to be error to allow counsel as part of his argument to read and comment on minutes of the evidence taken on a former trial of the same action, and that the error was not cured by an instruction to the jury not to consider anything so read. — Martin v. Orndorff, 22 Iowa, 504: State v. Whit, 5 Jones (N. C.), 224; see also the remarks of the court upon the statement of foreign matter in argument in the case of Fry v. Bennett. 3 Bos., 200. In Willis v. Forrest, it was ruled that where the pleadings contained irrelevant matter it was improper to allow counsel to read them to the jury. — 2 Duer, 310. In Mitchell v. Borden an objection being sustained to a notice of justification in slander, and thereby causing the exclusion of evidence, it was ruled’ that the objection to the evidence was not a proper subject of comment to the jury.— 8 Wend., 570.
In Hicks v. Drury, 5 Pick., 296, the court said, if a paper capable of influencing the jury on the side of the prevailing party, gets to them by accident and is read by them, the verdict will be set aside, even though the jury think they were not influenced by it, as it is impossible for them to say what effect it might have had; and in Whitney v. Whitman, 5 Mass., 405, where a material paper not read to the jury, was delivered to them by mistake and not discovered until after delivery of the verdict, the court, finding that the paper furnished material evidence for the prevailing party, refused to examine the iurors, and held that the matter must be governed by the tendency of the paper and that the verdict must be set aside.
*In the case of The State v. Hascall, 6 N. H., 352, *370 the defendant was convicted of perjury, whereupon it was shown that papers calculated to make an unfavorable impression on the jury were exhibited by the prosecutor at several public places where jurors boarded, and were read in the hearing of jurors during term and before the trial, and the court decided that for this cause the verdict should be set aside.
In Spenceley v. De Willott, 1 East R., 108, which was an action for usury, a new trial was granted because the plaintiff had published a statement of the case which was distributed about the court and hall before and at the time of trial; and in Coster v. Merest, 3 Brod. & Bing., 272, a new trial was .allowed on an affidavit stating that hand-bills reflecting on the plaintiff’s character had been distributed in court at the time ■of the trial and had been seen by the jury, and the court refused to hear affidavits, made by all the jurors, stating that no ■such placard had been shown to them. There is no occasion for dwelling on this part of the case after what has been said. 'The practice pursued was wrong, and the error was not cured ■or materially alleviated by the charge. The jury were not ■even told to disregard such of the articles as were read in the statement of the case and not afterwards offered in evidence, and the special direction to refuse attention to those which had been offered and rejected was calculated to imply in the jurors’ minds that they were entitled to regard all others. The omission to tell the jury to disregard the articles not offered was no doubt an inadvertence of the court. The effect, however, was the same as if it had been designed. But if the charge had been to disregard all unadmitted articles it would not have cured the error. Because it is quite impossible to conclude that the jurors had not been influenced too far by the erroneous rulings and proceedings, to be brought into the same impartial attitude by the court’s admonition, which they would have held if the counsel for defendant in error had been properly confined in his opening statement. The course of fair and settled practice was ^violated to the prejudice of plaintiff in error, and it is not a satisfactory answer to say that the court went as far as practicable afterwards to cure the mischief, so long as an inference re *371 mains that the remedy applied by the court was not adequate. And there is no doubt of the right of this court to revise in such a ease as this. If the trial court may pursue any course it pleases in relation to the opening statement, if it may act independently of all control, then the idea of a rule to be prescribed by this court under the constitution and legislative enactment for its guidance and government, is preposterous and absurd. But the point is too plain for argument. As already suggested, this court will not revise such matters unless there is plain evidence of action amounting to what is called an abuse of discretion and calculated to injuriously affect the legal rights of a party, and where such is the case, whether the result of accident, or inadvertence, or misconception, it will take cognizance. The error in this case was not cured, and is one subject to review, and is sufficient to require a reversal.
After the opening, the litigation proceeded upon the idea that the fact that Robbins’ bill had been placed by him on the files of the superior court, gave the right to the newspaper to publish his allegation in the bill implicating defendant in error, as matter of privilege. Whether in point of law the particular occasion was privileged or not, is not distinctly raised; though if it was not privileged, a number of serious matters cease to be important, and ought not to encumber the case. Upon the hearing, it was the opinion of counsel that the question was not raised, and although counsel for defendant in error touched upon it, it was not discussed. The court at present entertain a strong impression that the actual occasion was not such as to entitle plaintiff in error to claim it as one which could afford immunity, but in view of the circumstances do not feel at liberty to come’ to a settled determination. Before doing so a fair presentment and discussion of the question ought to be had. Still, in contemplation of this impression and the actual *p os ture of the case and the nature and shape of the questions concerning this claim of privilege, the court is not inclined to examine these questions now.
It is objected that the court erred in admitting certain pub *372 lications relating to Grelling, Warner, and Wah-Hap. It was made a question whether the paper was conducted with sufficient care to save plaintiff in error from punitory damages in -case the jury should find the article libelous and no actual malice. If such mode of proof was proper, these articles tended to show the want of such care.
The plaintiff in error claims that the charge that the paper was conducted recklessly, was only provable by evidence of general character, or by the circumstances which attended the publication in suit. This position is not assented to. The language of the court in Detroit Daily Post Co. v. McArthur 16 Mich., 447, plainly imparts the right to show the “recurrence of similar” libels, and points to the admissibility of specific acts to establish “the want of solicitude for the proper conduct of the paper.” It implies distinctly that particular instances may be adduced to make out the principal fact. See further Milwaukee & St. Paul R. R. Co. v. Arms, 1 Otto, 489; Com. v. Jeffries, 7 Allen, 548; Com. v. Morgan, 107 Mass., 199; Sheldon v. Hudson R. R. Co., 4 Ker., 218; Field v. N.Y. Central R. R. Co., 32 N. Y., 339; Baulec v. N. Y. & Harlem R. R. Co., 59 N. Y., 356; Penn. R. R. Co., v. Stranahan, 79 Penn. St., 405; Clark v. Periam, 2 Atk., 333; Barrett v. Long, 3 H. L., 395.
There is no dispute but that the circumstances connected with the preparation and publication of the particular article, and evidence of the actual management, may be shown, and we have no occasion now to see whether other modes of proof might not be allowed.
The court admitted several articles against objection, and on the claim that they tended to show actual malice on the part of the plaintiff in error. But it would seem that on deliberate consideration the judge finally concluded the admission *of this evidence was improper, and we see no reason to question the correctness of his final opinion. When he came to charge, he explained his change of opinion to the jury, and undertook to expunge the evidence. If it was practicable to cure the error in this way, which may be doubted, the charge was objectionable for want of distinctness. It did *373 mot convey to the jury what items of proof were to be rejected. As we understand the record, the case was submitted upon the theory that no actual malice had been shown, and that the right to give punitory damages must depend on whether the paper was managed with due care to avoid the publication of libelous matter.
Complaint is made of the admission of the “News” republication of the article from the “Chicago Journal,” or rather of the admission of the part of it which was offered. It appeared, as before stated, in the issue of the “News” of January 10th, 1876, being more than a month after the publication of the article in suit, and more than a month also after the suit was instituted.
The portion offered and received was, according to the record, so much of it as related to the defendant in error, and ■it was tendered and admitted “ as bearing upon the question of care and prudence in editing said paper.”
Without considering any other ground of objection, it is enough to say, that being a publication made after the alleged libel, it was too remote in point of time to afford any fair legal inference of the management of the paper before and at the time of the appearance of the libel, and the mode of management afterwards was not one of the substantial facts in the case.
The instruction based on the evidence relating to the management of the paper was not as guarded as it should have been. It went beyond the request of counsel for defendant in error, and was calculated to mislead. The correct view is well indicated in the case of Detroit Dost Co. v. McArthur, and no doubt the matter will be properly explained on another trial.
A point is made that plaintiff in error was entitled to have the jury say upon what count or counts they found, in ease of finding for defendant in error, and in view of the structure of the declaration, and of the facts, it appears to us there was ground for this claim.
The judgment must be reversed, with costs, and a new trial ordered.
The other justices concurred.