Spafford v. State.

# CRIMINAL LAW—OFFICE AND OFFICERS—TRIAL.

[Wood (6th) Circuit Court, March 4, 1907.]

Haynes, Parker and Wildman, JJ

## ELMER L. SPAFFORD V. STATE OF OHIO.

**1. EFFECT OF COMMENT ON MATTERS NOT IN EVIDENCE.**

Where a prosecuting attorney, in his closing argument to the jury in a case where the guilt of the defendant of the offense of which he is convicted is not free from doubt, refers to a paper he supposed had been put in evidence but on objection and investigation it was found not to have been so introduced, and his remarks are such, when taken in connection with contents of the document, as would tend to create such an impression on the minds of the jury of the guilt of the defendant as would not likely be removed by a mere charge by the court and a request by the prosecutor himself, to disregard the incident, the conviction should be set aside and a new trial granted.

**2. COUNTY SURVEYOR CANNOT CHARGE EXTRA TIME FOR HIS SERVICES.**

A county surveyor performing services for the county does not come within the purview of Lan. Rev. Stat. 7306 (B. 4364-62a) fixing a day's work for mechanics and laborers at eight hours, and when on a calendar day he devotes more than eight hours to such service he may not charge the county for such excess in addition to his regular *per diem*, or as hours of another day.

[For other cases in point, see 3 Cyc. Dig., "Counties," §§ 137, 138; 7 Cyc. Dig., "Surveyor," §§ 7-11.—Ed.]

**3. SURVEYOR MAY CHARGE FULL RATE PER DIEM FOR DEPUTIES.**

Such surveyor is entitled to payment at the rate of four dollars per day for all the days of service of his deputies, though he may not have been required to pay his deputies at that rate or for all their days of service.

**4. ACTUAL SERVICE, NOT ESTIMATES PER MILE, CONTROL SURVEYOR'S COMPENSATION.**

A county surveyor is not authorized to estimate and charge the county for the days of his services upon a given ditch or other improvement upon the basis of a certain number of days or hours per mile, but his charges must be based upon the days of actual service.

[For other cases in point, see 7 Cyc. Dig., "Trial," §§ 255-278.—Ed.]

[Syllabus approved by the court.]

ERROR to Wood common pleas court.

**Baldwin & Harrington,** for plaintiff in error.

**J. E. Ladd,** for defendant in error.

## PER CURIAM.

In December, 1906, an application was made to two members of this court on behalf of the plaintiff in error for a stay of execution of the sentence herein requiring his imprisonment in the Ohio penitentiary, so that said sentence might not be carried into effect pending the hearing of the cause by the court at its next session, to wit, in April, 1907.

Wood County.

After hearing and considering the statements of counsel as to the alleged errors and the questions involved in the record, it seemed to the two judges that the questions were so important and their proper solution so doubtful that it would not be expedient or just to permit sentence to be carried into execution until the court could have an opportunity to hear full argument and give careful examination to the questions involved, and, therefore, the usual order in such cases, i. e., for a stay of execution, was made.

Since then the prosecuting attorney has applied to the full membership of this court for an order setting aside said order of suspension, and we have been asked to make such full investigation of the case as is usual upon final hearing, to the end that the prosecuting attorney may have the advantage of our views upon certain questions involved, in the prosecution of other cases, civil and criminal, pending in the court of common pleas of Wood county, Ohio; and, upon his suggestion that it may be of assistance to him in expediting said business if we will express our views upon such questions now, instead of waiting until April, we have acceded to this request and have made a careful examination of the record, and have given consideration to the arguments of counsel and the authorities by them cited, besides many other authorities bearing upon the questions argued, and other questions that seem to be involved in the case. We can take no action in the way of either affirming or reversing the judgment herein, until the circuit court as such, sits in April, but we may foreshadow the action that it now seems to us we will be required to take at that time, though the opinion now expressed is not final, but we will hold ourselves at liberty to change or modify the same if persuaded that we should do so upon further argument.

We shall not now discuss all of the questions presented or examined, but it may be understood that we have found nothing in this record that seems to us to require a reversal of the judgment, except as herein specifically pointed out. It is made apparent by the result of the trial that one of the important questions of fact, if not the chief question that was submitted to the jury for its determination, of which a proper solution was doubtful, was, whether the plaintiff in error, Spafford, had knowingly and corruptly made excessive charges for the services of himself and his assistants as engineers upon a certain ditch, to wit: The Hutson joint ditch, an improvement promoted by Wood and Hancock counties, upon which Spafford, county surveyor of Wood county, was employed as engineer.

The prosecution was under Rev. Stat. 7075 (Lan. 10807), and the specific charge in the indictment was, in substance, that Spafford had

Spafford v. State.

made out and presented for allowance a bill which included a charge for the services of his assistant, W. H. Wood, for 21 days at the rate of $4 per day, making $84, whereas Wood had served but 11 days, on account of which Spafford was entitled to $44 and no more, so that his bill was excessive and fraudulent to the extent of 10 days or $40. It appears that the same bill in which the aforesaid charge was made on account of the services of Wood upon this ditch, contained a charge for 45 days at $4 per day, for services performed by Spafford, and 45 days at $4 per day for services of another assistant (all upon the same ditch), so that the whole charge was for 111 days, or $444.

By the testimony of Wood, it was shown that he had kept a private memorandum of the time of his service upon this ditch, and that while he had worked on fifteen calendar days thereon, he had reckoned some of said days as fractional, or parts of days, whereby the total number of days of service, or working days, were by him computed as 11 days only. Within the period comprised in this service, i. e., between November 25, 1903, and January 12, 1904, Wood performed other services of like character for Spafford, but on other jobs or improvements, and early in December, 1903, he made a report to Spafford of the days he had worked on different jobs in November, 1903; and likewise early in January, 1904, he made a report for December, 1903, but it is not clear from the testimony of Wood, nor from any evidence in the case, that by any accounts, reports, statements, settlements or other means, Wood made it plain to Spafford, before said account was presented by Spafford, that any one of the 15 calendar days he reported that he had worked on this ditch were reckoned by him, or should be computed as fractions of days instead of full days, or that he reported the number of hours that he worked on any of the so-called fractional days. The importance of this will be pointed out farther on. It is shown by the undisputed testimony of several witnesses that while at work on the Hutson ditch, Spafford and his assistants were crowded and hurried by their work, so that they often started out upon their work quite early in the morning and did not quit until late in the evening, and sometimes would not reach home until long after nightfall, and, besides, they felt obliged to, and did work thereon Sundays and nights, so that if Spafford might lawfully reckon the days of service of himself and his assistants according to the statutory rule provided for laborers and mechanics, that is, at eight hours for a day (as his counsel contended he might properly do) many of the calendar days upon which they were so employed would have yielded from one and a fourth to one and three-fourths of such work days; and it is not apparent that by such method of computation less than 111 days were so devoted to this work by Spafford and

Wood County.

his assistants. Again, it was contended on behalf of Spafford that in employment of the character of that in which he was so engaged, the law reckons as a full day every calendar day upon which he performed any service, even though the number of hours of such service might not equal those required to make up a full work day in the case of a common laborer or a mechanic; and there was testimony tending to show that there was a custom among surveyors and engineers to charge on that basis, and we have been cited to some authority tending to support that view of the law. Again, it was testified by Spafford that on works of the character of the Hutson ditch, it has been the custom of the office for many years to reckon the time of the engineer thereon at a certain number of days per mile, a rule and method which he claimed resulted in a fair average, and which was made necessary by the impossibility of keeping an exact account of the time employed on any certain improvement, especially in the office work, because of the constant interruptions to which the engineer and his assistants were subjected in being required to drop one job or improvement to take up another for a time; and it appears that, charging according to such alleged custom (as he says he did) the charge for 111 days was not excessive. Spafford also testified (and in this he was supported by other witnesses) that the work on account of which the 111 days were charged was not all completed on January 12, 1904, when the bill was presented, but that a large part thereof was performed subsequently to said date; and he says that at the time the bill was presented it was made known to the commissioners that it covered not only the services already performed but an estimate of the time that would be required to complete the necessary preliminary engineering work for the ditch; and he declares that though too many of the 111 days may have been attributed to Wood in his account and estimate, this error was immaterial, since 111 days were not excessive or an overcharge for the services of himself and his two assistants engaged upon the work, even though the rule as to a certain number of days per mile were not applied. All these claims and contentions on behalf of Spafford were disputed by the state, and evidence was introduced by the state in opposition thereto, and all were properly submitted to the jury upon the question whether the charges were in fact excessive and unauthorized.

The court refused to charge the jury that the statutory rule of eight hours constituting a day applied to the engineer or his assistants, but charged them that any custom in that behalf shown by the evidence to prevail amongst engineers and surveyors, should control. Upon this subject we have to say generally that we find no error in the statement of the law by the trial judge; and we cannot say that the jury was not

fairly warranted in finding Spafford guilty of knowingly making charges in some degree excessive and unauthorized, and therefore fraudulent; but, as the evidence stood at its conclusion, it is apparent that there was room for honest doubt in the minds of the jury as to whether Spafford had willfully perpetrated the fraud and crime charged, and, if so, whether he had presented a bill that was known to him to be excessive, and which was, therefore, fraudulent, for as much as $40, or for as much as $35.

We think it probable that the jury was brought to resolve this doubt against the accused by either or both of two circumstances, to wit: First, a failure of the jury to appreciate the importance of determining the exact amount for which the bill might be deemed fraudulent, and therefore to note the uncertainty of the evidence before mentioned as to the information possessed by Spafford of the number of working days devoted to this work by Wood at the time Spafford presented his bill; and, secondly, by an unfortunate reference of the prosecuting attorney in his closing argument, to matter not in evidence, but which the prosecutor apparently supposed was in evidence. It is to be remembered that the guilt of the accused must be shown by the evidence produced at the trial, and the evidence must show guilt so clearly as to produce in the minds of the triers a moral certainty of guilt admitting of no reasonable doubt thereof. While, as before stated, we are not persuaded that the proofs in the case do not meet these requirements so as to warrant the conclusion of Spafford's guilt of some offense, we are persuaded that they do not warrant his conviction of knowingly presenting a bill that was excessive to the extent of $40, or for as great an amount as $35.

The whole charge and the only charge against the plaintiff in error, and the only matter the jury had a right to consider, was that respecting the 21 days on account of the services of Wood on this particular ditch, and as set forth in the particular account wherein it appears. Whatever other offenses of like character on the part of Spafford the testimony may show him to have committed, and however much the amounts involved therein, no part thereof could properly be added to the amount that was fraudulent in the bill of January 12, 1904, or could have been considered legitimately in this case, except as the same may have reflected light upon the knowledge, motive or intent of Spafford in making up and presenting this bill. Looking at the evidence bearing on this subject, we find, as before stated, that Wood worked on the ditch on 15 different calendar days; that he so reported to Spafford, but we fail to find that he reported to Spafford that some of these days were but fractional work days, or that he had not worked enough hours

Wood County.

on any of said days to justify their being reckoned as whole work days. It might be fair to infer that Wood did make this known to Spafford if this were a civil action, and the probability that he did so, in such a case, might be strong enough to support a verdict based thereon; but that he did so, is not shown with the degree of certainty required to support a conviction in a criminal case.

A significant thing noticeable in the testimony of Wood, to which allusion has been made, is the fact that while he states that he reckoned his services on some of these calendar days at a half a day, three-fourths of a day, etc., he does not in any instance state how many hours he devoted to the work for which he made the charge of only a partial day, but he seems to be quite unable to do so; and for aught that appears, he may have worked enough hours on every one of those so-called fractional days to have justified a charge therefor as full days. As was properly held by the trial judge, how much, or how little, Wood charged to or received from Spafford for his services, is wholly immaterial and aside from the real question; for Spafford was authorized to charge $4 per day for the services of Wood even if he was required to pay less per day to Wood; and likewise, Spafford was authorized to charge at that rate for what amounted to a day even if Wood reckoned it at less than a day and charged accordingly. The importance of care and exactness in fixing the amount, if any, for which the bill should be found to be fraudulent, may not have been, and it seems to us probably was not, understood and appreciated by the jury; and it may have been, and probably was, regarded as a matter of indifference. As a matter of fact, it involved in this case all the difference between a felony, punishable by imprisonment in the Ohio penitentiary, and a misdemeanor punishable by a fine and imprisonment in the county jail for a limited period, or both. No emphasis was by the charge of the court placed upon the importance of determining the exact sum that might be deemed fraudulent. The record discloses that the jury, after about two hours deliberation, returned a verdict of guilty, but in their verdict they stated no sum, and that upon being informed by the trial judge that the verdict was therefore imperfect and that they must again retire and insert the amount for which they found the bill fraudulent (but without any suggestion of the importance of this matter, or that different amounts might involve different consequences) thereupon they again retired, and in a very few minutes, returned into court with the full amount stated in the indictment, to wit, $40 inserted in the verdict.

We do not criticize the action of the court herein, but merely call attention to what occurred as something suggesting the thought and the apprehension that the question of the amount involved may not have

received the careful consideration at the hands of the jury that its importance merits, or that it would have received had the jury appreciated the consequences. However this may be, we repeat that we are of the opinion that the evidence does not make it sufficiently certain that Spafford knew that the work done by Wood on the 15 days reported was not sufficient to justify a charge for 15 full days; and if he proceeded upon the assumption or belief that there were 15 full days, or that the time of service by Wood exceeded twelve and a quarter days, or that the work comprehended enough time to justify a charge for so many days, (assumptions not irreconcilable with the evidence) he could not have been guilty of making and presenting a bill that was false to an amount as great as eight and three quarter days, or $35, and therefore he could have been guilty of no more than a misdemeanor. To repeat, as at present advised, we are of the opinion that a conviction of a felony cannot be said to be supported by the evidence with that degree of positiveness required in criminal cases; and as it is not in our power to amend the verdict or reduce the penalty, we feel bound to reverse the judgment and remand the case for a new trial, unless, on further argument, we shall be brought to a different view of the matter.

In this connection we again call attention to the statements of the prosecuting attorney made to the jury in his closing argument. The record recites the incident as follows:

"Thereupon counsel proceeded to argue said cause to the jury, and the prosecuting attorney in his closing argument and near the conclusion thereof made the following statement to the jury: 'That the bills presented by the defendant were false and fraudulent is shown by the fact that he paid $626 back into the county treasury.'

"Mr. Baldwin interrupting, said to the court: 'We object to this statement of the prosecutor. There is no such evidence in the case.'

"The prosecuting attorney replied: 'There is such evidence,' and he thereupon took from the trial table a paper which had been identified by the witness George Spencer and marked 'exhibit B-3' and held the same in his hands before the jury, and further said 'Here it is.'

"Mr. Baldwin said: 'That paper was not admitted in evidence.'

"The prosecuting attorney replied: 'It was and was sworn to by George Spencer.'

"The court then said: 'I don't think that paper was admitted in evidence, or that anything was testified to relating to the refunding of any money.'

"The prosecuting attorney replied: 'I am very certain it was, and it will be so found in the stenographer's notes.'

## Wood Cou ıty.

"Thereupon the court directed the stenographer to examine the notes. This the stenographer did, occupying several minutes during which time no other proceedings were had. And after such examination the stenographer reported to the court that said paper marked 'exhibit B-3' had not been admitted in evidence.

"Thereupon the court instructed the jury as follows: 'The statement made by the prosecuting attorney to the effect that the defendant paid a certain sum of money back into the county treasury was improper, no such evidence is before the jury, and you are instructed to disregard that statement.'

"The prosecuting attorney resuming his argument said to the jury: 'I thought that paper was in evidence. It seems I was mistaken about it. You may disregard what I said about it.' Thereupon the defendant excepted."

We are assured that the prosecuting attorney made the statement in entire good faith believing that this matter had been properly brought before the jury, and we see no reason to doubt this. Nor do we see what more could well have been done by him, or the court, to correct the mischief probably done by his unwarranted statement; but whether what he did was done in good faith or from improper motives, is not a question of so much importance as the question whether his action had a damaging effect upon the cause of the prisoner; and this involves the further question, whether such effect was merely temporary and was dissipated by the admonition of the court and the request of the prosecuting attorney that the jury should disregard what he had said. The vital question is, not "Did the prosecuting attorney wilfully commit a fault," but, was something done that prevented the accused from having a fair trial. It has already been pointed out that the whole question of the guilt or innocence of the accused as presented to and considered by the jury, probably turned upon their decision as to whether he acted in good faith in presenting the bill in question. That being true, and the evidence bearing thereon not being free from doubt, it is not only conceivable, but altogether probable that a statement to the effect that he had acknowledged his bad faith in the transaction by paying back part of what he had thus obtained from the county, together with the exhibition of a paper in which it was said this acknowledgment of his guilt appeared, would sink deep into the minds of the jury and would tend to resolve all doubts on that question against the prisoner. The prisoner, or his counsel, had no means of defense against the alleged evidence thus produced and exhibited, though, if the paper had been regularly offered and admitted in evidence, it might have been explained so as to make it quite harmless. Under the circumstances, coun-

Spafford v. State.

sel for the prisoner could only protest and object to the court, and the court could only say to the jury that the paper and statements were to be disregarded. But, after all, it seems to us that the jury would naturally reflect that the existence of such a paper was manifest, and that counsel for the prisoner had simply succeeded in preventing them from examining it, and in procuring a direction of the court that they should not give it consideration, and that the failure to bring it properly before them must have been due to some oversight upon the part of the prosecuting attorney. Is it not probable that such direction to the jury was entirely fruitless; that the mischief was of a character that could not be corrected by such means? If so, it is manifest that the prisoner did not have a fair trial, and that he should be granted a new trial without respect to the question whether the prosecutor acted in good faith or bad faith.

In the making up of a jury for the trial of a criminal case extreme care is taken to procure for such service, men who have minds free from impressions supposed to be produced by talking with witnesses about the facts of the case. Why is this done and required if it may be supposed to be possible to remove such impressions by a simple request that the jury shall disregard what they have so heard? And if such impressions cannot be thus obliterated, why should it be thought that like impressions made by the solemn assertions of the state's representative, who is supposed to stand for the protection of the prisoner against wrong as well as for the enforcement of the rights of the state, can be effaced by the mere request of them to banish the matter from their minds, though (as here) the statements stand unrefuted? In many cases, perhaps in most cases, it is held by the reviewing courts that it will be presumed that such admonitions to disregard matters coming to the attention of the jury by improper admission of evidence afterwards ruled out, by improper statements, and the like, have been regarded by the jury and have been effective; but it is not always so held; and where a statement as damaging as this would naturally be, is made by the prosecuting attorney in his closing argument, and upon a point so vital to an issue of fact, the proper solution whereof is left in so much doubt by the legitimate evidence in the case, we think it would be unsafe to assume that the mischief has been cured by the cautionary remarks of the court, and that such assumption would not be supported by the experience of mankind. As said by Judge Smith, in the first circuit, in the course of an opinion in the case of *McGuire* v. *State*, 2 Circ. Dec. 318 (3 R. 551):

"We can readily see that the introduction of some kinds of incompetent evidence might be of such a character as greatly to prejudice a defendant, and that in such cases its withdrawal would not rectify the

Wood County.

injury done, and that it would be proper for a new trial to be granted under such circumstances.''

In *Scripps* v. *Reilly*, 35 Mich. 371 [24 Am. Rep. 575], an action for libel, the judge at the trial permitted counsel in closing the case, to read, against objection, papers not admissible in evidence, and which were not afterwards offered in evidence. This was held to be such an abuse of discretion as to require the granting of a new trial; and it was further held, that the error was not cured by a subsequent instruction to the jury to disregard said papers.

In *Martin* v. *Orndorf*, 22 Iowa 504, the counsel were permitted to read and comment upon testimony taken at the former trial between the same parties; and this was held to be error sufficient to call for a reversal, and that the error was not cured by a charge to the jury not to consider such testimony.

The statutes of Ohio, and many other states, permitting a defendant in a criminal case to testify on his own behalf, provide that, if he does not do so, no reference to such failure to testify shall be made by the prosecuting attorney; and it is held in many cases that such prohibited reference to the failure of the prisoner to testify, constitutes error requiring a reversal, and that such error cannot be cured by any admonition of the court to the jury to disregard such reference.

Many other illustrations might be given of matters improperly, or even accidentally brought to the attention of a jury during the course of a trial, or during their deliberations, resulting in a mistrial, even where no person connected with the trial could be said to be in fault.

In the case of *Angelo* v. *People*, 96 Ill. 209 [36 Am. Rep. 132], counsel for the people commented on the omission of the defendant to testify in his own behalf, and it was held that that was ground for a new trial, although the counsel was stopped by the court and the jury were instructed to disregard such comments; and in the course of the opinion, this was said:

''It is true, that when stopped by the court, he said it was inadvertently done, and the jury were directed by the court to disregard that portion of his argument. Notwithstanding what he said, and the direction of the court to disregard it, who can know what effect it may have had on the jury in forming their verdict? * * * Where such things are done, whether intentionally or inadvertently, it may make an impression on the minds of the jury that nothing can remove. And who can say that this inadvertence may not have produced the verdict of guilty?

''We think the plaintiff in error has not had a fair trial, and the

Spafford v. State.

judgment of the court below must be reversed and the whole cause remanded.''

And in the case of *Smith* v. *State*, 44 Tex. Cr. App. 137 [68 S. W. Rep. 995; 100 Am. St. Rep. 849], counsel for the state, in his closing speech to the jury, commented upon the atrocious character of the crime and declared that while he did not believe in mob law as a rule, that its enforcement in a case like this would be justifiable, and continued: ''I will be doing my duty as a citizen and a father if I can induce this jury to hang the defendant as high as Haman and then go home and tell my wife what I have done, and hear her remark, 'Well done, thou good and faithful servant, you have performed your duty.' ''

These remarks were objected to at the time and the court reprimanded counsel and instructed him to desist from any further remarks upon that subject, which he did, and the court at the request of the appellant, instructed the jury not to regard said remarks; but the reviewing court, while recognizing the rule that, ordinarily, a charge of the court instructing the jury to disregard improper remarks made in argument will cure the error, declared that this was a case where the rule would not apply, because it seemed to the court that the admonition of the trial judge to the jury to disregard such remarks, could hardly eradicate from the minds of the jury the effect of such appeal made to them by counsel for the state.

But illustrations need not be multiplied. If the evidence were so clear as to compel the belief, beyond a reasonable doubt, of the bad faith of Spafford in presenting the bill, we would be disinclined to regard this episode as one probably resulting in prejudice to his rights, and we are not prepared to say that, in any event, standing alone, it would require a granting of a new trial. But, under the circumstances of this case, we believe the trial judge should have regarded and given weight to it on the motion for a new trial as a circumstance that probably had some influence in producing the verdict of guilty.

It seems to us that the trial judge was more confident than the circumstances warranted that his direction to the jury, that they should disregard what the prosecutor had said about the exhibit not in evidence, was effective, and eradicated the impression made by the action and remarks of the prosecutor. In our opinion the uncertainty in the evidence touching the information possessed by Spafford of the number of work days devoted by Wood to the Hutson joint ditch at the time the bill in question was made out and presented, coupled with the probability that such remarks by the prosecutor had a damaging effect, prejudicial to the cause of the accused, and the further fact that the conviction was of a felony, instead of a misdemeanor, requires the re-

Wood County.

versal of this judgment and the granting of a new trial; and holding these views, of course the motion to set aside the order suspending the execution of sentence should be, and accordingly is, overruled.

Later, to wit: April 27, 1907, in the same case, before the same court, Judge Parker stated as follows:

"The case of Spafford v. State of Ohio has been submitted to this court upon the briefs formerly filed with and considered by the court at the time a motion was submitted by the prosecuting attorney to set aside the order suspending the execution of sentence, and we have been furnished with no further light from counsel either in the way of briefs or oral argument, so that we assume that if they are not content with our decision made at that time they are at least not prepared to point out any new considerations that should influence the court to change the views then entertained and expressed.

"We examined the case very carefully at that time and we have had no reason since upon reflection or upon any suggestion that has been made to us to doubt the correctness of our views then expressed, and therefore the judgment of the court of common pleas will be reversed upon the grounds stated fully in the opinion handed down at that time."