## The People v. Edward O'Brien, Jr.

[See 60 Mich. 8.]

*Criminal law—Bill of exceptions—Evidence—Admissions and state-*
*ments of respondent—Failure to swear witness—Argu-*
*ment of counsel—Credibility of witness.*

1. The record, as made in the court below, cannot be amended at the
   hearing upon a writ of error and bill of exceptions, but must be
   taken as settled by the circuit judge, unless some proceedings are
   taken before hearing to amend it.
2. The admissions or declarations of an accused party, when volun-
   tarily made, are *competent* evidence against him ; but the state-
   ments of another are purely hearsay, unless made under such
   circumstances, in the presence and hearing of the accused, that
   his acquiescence in such statements can be plainly inferred from
   his demeanor or conduct.
3. It is error to allow a prosecuting attorney to comment unfavorably
   to the jury upon the failure of the respondent to swear a witness
   whose alleged statements, as sworn to by a witness for the peo-
   ple, were *improperly* received in evidence.
4. In a criminal case it is presumed that *all* of the evidence relating
   to the subject-matter of the exceptions is in the record; and the
   Court is bound by the record as presented, and cannot go out-
   side of it to guess that there was *other* evidence given on the
   trial, qualifying the testimony contained in the bill of excep-
   tions.
5. If the jury are satisfied that a witness has testified truthfully in
   any portion of his testimony, they are permitted to receive and
   act upon it, although satisfied that other portions are false, or
   that he has spoken differently out of court, and has a bad
   reputation for veracity among his neighbors.   Such testimony is
   to be regarded with suspicion, and closely scanned and consid-
   ered; but, if believed by the jury to be true, it is entitled to the
   same weight as if coming from any other source.

Exceptions before judgment from Allegan.   (Arnold, J.)
Argued January 26, 1888.   Decided February 2, 1888.

Respondent was convicted of malicious trespass.   Verdict

set aside and new trial granted.    The facts are stated in the opinion.

*Pope & Hart,* for respondent.

*C. R. Wilkes,* prosecuting attorney, for the People.

MORSE, J.    The respondent has been twice convicted of a willful trespass upon the improved lands of Levi and Charles H. Loomis, and destroying grain growing thereon, under section 9174, How. Stat.

The case as it appeared in this Court the first time will be found reported in 60 Mich. 8 (26 N. W. Rep. 795).

We do not consider it necessary to discuss the objections raised upon the second trial, and now urged here again, that were by us decided and disposed of when the case was here before.    The objections to the complaint and warrant, as to the description of the premises and the kind of grain destroyed not being specifically set out, comes, as then said, too late.    Nor do we consider that the defendant could have been harmed on the second trial by the insufficiency of the description.    He must have been informed fully upon the first trial of the exact location of the premises, and the kind of grain that he was accused of destroying.    The only object of a specific identification of the land and the grain in the complaint and warrant would be to apprise him of the particular offense with which he was charged.    There was not, on the last trial, the same urgent reason for this specification which existed at the first.    There is, therefore, no better reason for quashing the complaint and warrant now than there was when the case was first here.

But respondent's counsel claim that they established, before the beginning of the last trial, by affidavits before the circuit court, which affidavits are made a part of the bill of exceptions, that they did in fact raise these objections, and move to quash therefor, before the first trial of the cause;

and that the showing by their affidavits entitle them to raise the point here.

It, however, appears in the record that the circuit judge refused to amend the record, so that it would show the making of this motion, upon the express ground that no such motion had ever been made. If the motion was made, as claimed by these affidavits, it must have been made before this same circuit judge. We cannot amend the record as made by the circuit court, at the hearing upon a writ of error and bill of exceptions. We must take the record as settled by the circuit judge, unless some proceedings are taken before hearing to amend it.

The clerical error discovered in the warrant, since the last trial, cannot avail the defendant now. The word "there" left out of the warrant in relation to the "growing and being" of the grain on the land, is found in its proper place in the complaint. It was a mere clerical omission, and corrected itself in the reading, but, if of any consequence, should have been objected to before the first trial of the cause.

The case against the respondent rested almost entirely upon the testimony of Theobald Miller, who claimed that he and the accused committed the trespass; that he took part in it. at the request of the respondent; that they stayed that night at the house of O'Brien's father, he and the accused sleeping together. He testified that he and the respondent got up about 2 o'clock A. M., and put on rubbers, and went to the wheat field of the Loomises, and cut down and destroyed some standing wheat growing upon the premises, and committed other depredations. He further gave evidence that during the day before the trespass was committed the respondent said to him,—

"Will you stay here to-night, and tell your wife you are to stay here so as to pick squash-bugs early in the morning before they fly? And we will tell Cobb that you are to stay so as to pick bugs early in the morning."

He was permitted to further testify, against objection, that the morning after the trespass, while they were picking squash-bugs at O'Brien's, the old man O'Brien, father of the respondent, said to Cobb in the presence of respondent:

"If Mr. Loomis had any depredations committed last night we know that Eddie [respondent] and Miller did not do it, because they both stayed at our house all night."

Cobb was then called by the people, and testified that the respondent told him the night before that Miller was going to stay there that night to pick squash-bugs; and that old man O'Brien, the next morning, while they were at work, said, in the presence of Miller, respondent, and himself, that Eddie and Miller had both staid there at his house that night, and he knew that they did not do it,—speaking of the trespass committed upon the premises of Loomis. This statement of the old gentleman was objected to as immaterial, as the respondent could not be convicted upon the statements of his father. The evidence was, however, admitted and retained in the case.

The respondent made a statement in his own behalf, not being sworn. He said he had no knowledge of the depredations; that he staid at home that night, and did not commit the trespasses, and was not with Miller when they were committed; and denied the testimony of Miller relative to the matter. The testimony is not all set out in the record, and it does not appear whether or not he gave any evidence as to Miller staying at his father's house that night, or that he said anything about the remark his father was alleged to have made in the morning while picking bugs.

In connection with this evidence as to the old man's statement to Cobb, and the fact of Miller's testimony that he stayed at O'Brien's that night, the prosecuting attorney, in his address to the jury, to use the language of the record,—

"Asked the jury to consider the fact that the respondent's father and mother were not sworn for the respondent as wit-

nesses, as being a circumstance tending to show the guilt of respondent.''

These remarks were objected to by respondent's counsel as being immaterial and irrelevant and not a proper subject of comment to the jury; and he requested the court to forbid the prosecuting attorney commenting upon the fact that the respondent's father and mother were not sworn as witnesses in his behalf.

The court ruled that the failure of the respondent to place his father upon the stand to testify in his behalf, if he had knowledge of facts material to the defense claimed by respondent, was a legitimate subject of comment by the prosecuting attorney to the jury, respondent's father having been in the court-room and in attendance upon the trial during the whole thereof. The court further directed the prosecutor to refrain from commenting upon the fact that respondent's mother was not produced as a witness in his behalf, and further said to the jury that any statement or argument of the prosecuting attorney as to the failure of the respondent to produce his mother as a witness in his behalf could not be considered by them, nor could the fact that she was not so sworn be considered by them.

The respondent's counsel also requested the court to instruct the jury in this behalf that—

"The jury are not to draw any inference unfavorable to the respondent from the fact that the father of respondent was not sworn in his behalf, nor that the respondent's mother was not sworn.''

This request was not given by the circuit judge, nor was any reference made to the subject in his general charge.

If the evidence of what respondent's father said the morning after the trespass ought not to have been admitted against the respondent, then any argument, based upon the fact of the old gentleman not being called as a witness, was grave error. Under the facts of the case there was nothing that

he could have testified to that would have aided the accused or thrown any light upon the case, save a denial that he made any such statement as testified to by Miller and Cobb, or that Miller did not stay at his house that night. But if Miller did stay there, and his story was true, neither the respondent's father nor mother could have disputed it.

Miller claimed that he and the respondent went to bed, and started out about 2 o'clock in the morning. In all probability neither the father nor mother of the respondent could have testified truthfully that they knew their son did not leave his bed, or the house, long enough to be engaged in this trespass. It does not appear from the record that any testimony was given on the part of the respondent controverting the fact of Miller's staying at the house of O'Brien that night. The respondent's statement, as given in the record, does not deny it. The record contains this statement at the conclusion of the evidence: '

" The foregoing is not all the testimony given in the case, either on the part of the people or of the respondent."

But we cannot presume anything against the respondent. In a criminal case we are bound to presume that all the evidence relating to the subject-matter of the exceptions is in the record. At least, we are bound by the record presented here, and cannot go outside of it to guess that there was other evidence given on the trial, qualifying the testimony contained in the bill of exceptions.

I do not think the statement made by O'Brien, senior, was admissible against the respondent.

The admissions or declarations of an accused party, when voluntarily made, are competent; but the statements of another are purely hearsay, unless made under such circumstances, in the presence and hearing of the accused, that his acquiescence in such statements can be plainly inferred from his demeanor or conduct.

The correct rule, I think, is stated by Mr. Greenleaf in his work on Evidence, volume 1, § 197:

"Acquiescence, to have the effect of an admission, must exhibit some act of the mind, and amount to voluntary demeanor or conduct of the party; and, whether it is acquiescence in the conduct or in the language of others, it must plainly appear that such conduct was fully known, or the language fully understood, by the party, before any inference can be drawn from his passiveness or silence. The circumstances, too, must be not only such as afforded him an opportunity to act or to speak, but such also as would properly and naturally call for some action or reply from men similarly situated."

The record states that this remark of the father was made in the presence of the respondent, but there is nothing to show that he heard it, or paid any attention to it. There are no circumstances shown that lead to any inference that he heard and understood it, except that the four men were in the same field or lot, picking squash-bugs. It is not probable that any two of them were picking bugs from the same hill of vines, and, for all that the record discloses, the respondent might have been so far away, or of such defective hearing, that the remark did not reach him.

If Miller did stay at the house of O'Brien that night, there was, if respondent heard and understood the statement of his father, no call or occasion for him to speak, if he was innocent. The remark was to the effect that the accused was not guilty of the trespass, and the respondent would not naturally dispute his father, and say that he did commit the depredations, whether he was guilty or innocent of the offense. There was naturally no reason for anything but silence on the part of the accused; nor would this silence have any tendency to corroborate the story of Miller that he stayed there, even if that fact had been denied by the respondent upon the trial. If Miller had not stayed there, the respondent would not be likely, if innocent of the crime, to dispute his father upon a matter in such case so immaterial as the fact of where Miller

might have slept that night, because, if the respondent was innocent, he would be presumably ignorant of any complicity of Miller in the trespass, and it would not seem important to him where Miller stayed that night.

It seems to me that in no event could any legitimate inference be drawn against the respondent because of his silence on the occasion, as testified to by Cobb and Miller. The introduction and retaining of this evidence in the case was error, and the remarks of the prosecutor and the court to the jury, as to the failure of the respondent to swear his father as a witness, must have been based upon this testimony erroneously in the case. The whole proceeding in this respect was harmful and prejudicial to the rights of the accused.

There was no error in permitting Mrs. Miller to testify that her husband did not stay at home the night of the trespass. This was a fact having some weight in corroboration of the statements of Miller as to his whereabouts, and was admissible.

Five witnesses were sworn on the part of the defendant, and testified that the general reputation of Miller was bad for truth and veracity. No person sustained his reputation.

The court was requested to charge the jury that, if they believed the testimony of these witnesses, Miller was unworthy of credit, and they ought not to convict respondent on his testimony.

The court refused this request, and instructed the jury as follows:

"The evidence given in this case with reference to statements made by the witness Miller out of court, which it is claimed are inconsistent with or contradictory to his statements made under oath, as well as his admissions upon cross-examination, or statements made by him tending to contradict his testimony, are admissible for the purpose of impeaching his testimony upon the stand; the testimony of five witnesses with reference to the general reputation of

Miller for truth and veracity was also admissible to impeach this witness.

"Now, all this testimony is for your consideration; its office is to assist the jury in correctly judging of the credit due the testimony of the witness so sought to be impeached, and whether his sworn statements in whole or in part are true. If this witness' character for truth and veracity is so bad that he is unworthy of belief, and you so believe from the evidence, you ought not to credit him; but if, notwithstanding any and all testimony introduced to impeach him, in view of all the evidence in the case, you are satisfied he has told the truth with reference to the respondent's connection with the transaction constituting the offense charged, you are at liberty to act upon his testimony, and give it such credit as you believe it entitled to."

The law was correctly stated by the court, and the request properly refused. One who has generally a reputation as a liar, may, and often does, tell the truth. The truth is always the truth, no matter from what source it may come; and if the jury are satisfied that a witness has given the truth in any portion of his testimony, they are permitted to receive and act upon it, though they are satisfied that other portions of his testimony are false, or that he has spoken differently out of court, and has a bad reputation for veracity among his neighbors generally. The testimony of such a man is to be regarded with suspicion, and closely scanned and considered, but, if believed by the jury, under all the other facts and circumstances in the case, to be true, it is entitled then to the same weight as the truth would have, coming from any other source.

For the errors noted the respondent must be granted a new trial, and the verdict of the jury in the court below vacated and set aside.

The other Justices concurred.