## PEOPLE *v.* BIGGE.

1. CRIMINAL LAW—EMBEZZLEMENT—PROSECUTOR'S OPENING STATEMENT—HEARSAY.

> In prosecution for embezzlement, prosecutor's remark in opening statement that he would produce a witness to whom defendant's brother-in-law stated defendant was guilty, which statement was made in the presence of defendant who said nothing about it, *held*, inexcusable, wholly without warrant of law, and to have planted an irremovable impression in minds of jury, and reversible error notwithstanding defendant's objection was not followed by request for a ruling and an instruction to the jury, where testimony taken to support such statement in the absence of the jury was ruled inadmissible as hearsay.

2. SAME—HEARSAY STATEMENT OF DEFENDANT'S GUILT—SILENCE.

Since there can be no such thing as confession of guilt by silence in or out of court, the unanswered allegation by another of the guilt of a defendant is no confession or evidence of guilt on the part of a defendant.

3. SAME — MISCARRIAGE OF JUSTICE — STATUTES — CONSTITUTIONAL LAW.

Statutory provision that no judgment or verdict should be set aside or reversed or new trial granted in a criminal case on various enumerated grounds unless the error complained of resulted in a miscarriage of justice may mollify minor errors which clearly can be held not to have affected the result but is not a cure-all, must serve within constitutional limitations, and cannot cure an error which deprives an accused of the right of due process of law (3 Comp. Laws 1929, § 17354).

4. SAME—SUPREME COURT.

Since the Supreme Court is not the trier of the facts in a criminal case it must apply the law to the case as tried and is not concerned with the guilt or innocence of the accused.

5. SAME—EMBEZZLEMENT—INTENT—EVIDENCE—OTHER LIKE ACTS.

Intent is a matter involved under a charge of embezzlement and the prosecutor is at liberty, under the statute, to show like acts tending to disclose that the act charged was with intent on the part of defendant fraudulently to convert the property to his own use (3 Comp. Laws 1929, § 17320).

McALLISTER, J., dissenting.

Appeal from Manistee; Ferguson (Homer S.), J., presiding. Submitted October 13, 1938. (Docket No. 84, Calendar No. 39,978.) Decided April 4, 1939.

Charles G. Bigge was convicted of the fraudulent conversion of money. Reversed and remanded for a new trial.

*Kim Sigler* and *Max C. Hamlin,* for defendant.

*Raymond W. Starr,* Attorney General, *Wilfred J. Lewis,* Prosecuting Attorney, and *Howard L. Campbell,* Special Prosecuting Attorney, for the people.

WIEST, J. Under an information charging fraudulent conversion of money, defendant was tried, convicted, and sentenced. A new trial was denied, and defendant, in prosecuting review, presents two questions:

"1. Was prejudicial error committed by the special prosecuting attorney in his opening statement to the jury?

"2. Did the special prosecuting attorney commit prejudicial error in stating to the jury in his opening statement that the defendant, C. G. Bigge, had embezzled the sum of $279,365.11, and then proceeding to introduce proofs in support thereof on the theory of showing intent, until limited by the court in the number of said items?"

In his opening statement to the jury of intended proof the special prosecutor said:

"On the 1st day of May, 1937, in Detroit where a conference was held with Mr. Bigge with one of his very close friends and a relative, the matter of his embezzlement was talked over at length by another witness who will testify in this case. They were going over various items of this embezzlement and the amount, and what Charles had done with the money, and this person, his brother-in-law in fact, said to this witness who will testify, 'What's the use of going over this matter again. Charles is guilty as hell.'

"*Mr. Sigler* (attorney for defendant): I object to that as being improper unless Charles G. Bigge was present.

"*Mr. Campbell* (special prosecuting attorney): I haven't finished. Charles Bigge could have said right there if it wasn't true. It was his duty to have said so."

Good practice required counsel to follow his objection with a request for a ruling and an instruction to the jury. This was not done.

At the trial the prosecutor offered testimony that the defendant was present in the room and claimed, under the authority of *People* v. *Todaro,* 253 Mich. 367,* the statement and failure of defendant to deny the same was admissible.

In the absence of the jury the court took the testimony and ruled it inadmissible. The error, if any, was, therefore, in the opening statement.

The *Todaro Case* was confined to *res gestæ* occurrences and is no authority for admitting the testimony in the instant case. The time has not yet come when an accused must cock his ear to hear every damaging allegation against him and, if not denied by him, have the statement and his silence accepted as evidence of guilt. There can be no such thing as confession of guilt by silence in or out of court. The unanswered allegation by another of the guilt of a defendant is no confession of guilt on the part of a defendant. Defendant, if he heard the statement, was not morally or legally called upon to make denial or suffer his failure to do so to stand as evidence of his guilt. He said nothing, and what was said in his presence by another was inadmissible, just as the court later held.

Did the statement of the prosecutor constitute reversible error?

We are urged to notice the guilt of defendant appearing in this record and affirm the conviction under the authority of 3 Comp. Laws 1929, § 17354 (Stat. Ann. § 28.1096), which reads:

"No judgment or verdict shall be set aside or reversed or a new trial be granted by any court

---

* See *People* v. *Todaro,* 256 Mich. 427, on rehearing.—REPORTER.

of this State in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice.''

That statutory provision is not a cure-all for it must serve within constitutional limitations or else be declared void. Minor errors which clearly can be held not to have affected the result may be mollified by this statutory provision, but errors which deprive an accused of the right of due process of law cannot be composed thereby to the detriment of an accused. The responsibility of maintaining the right of fair trial and due process of law is placed with the judicial branch and cannot be otherwise by legislative permission. We are not concerned with the guilt or innocence of the accused, for we are not triers of the facts and must apply the law to the case as tried. The statement was inexcusable, wholly without warrant of law, planted irremovable impression, and rendered defendant a victim of the error. The prosecutor by such statement of intended proof of defendant's guilt brought an effect so probable, so inadmissible, and so prejudicial as to constitute irreparable error.

The charge in the information involved intent and the prosecutor, under the statute (3 Comp. Laws 1929, § 17320 [Stat. Ann. § 28.1050]), was at liberty to show like acts tending to disclose that the act charged was with intent on the part of defendant fraudulently to convert the property to his own use.

We find no objection preceding the limitation imposed by the court and do find the utmost care taken by the court in limiting consideration by the jury

of such other acts. In the maintenance of right of trial by jury and full integrity of its incidents we are constrained by the mentioned error to reverse the conviction and remand the case for a new trial.

BUSHNELL, SHARPE, CHANDLER, and NORTH, JJ., concurred with WIEST, J.

POTTER, J. Defendant was tried, convicted, and sentenced for a criminal offense. In his opening statement to the jury, the special prosecuting attorney said:

"On the 1st day of May, 1937, in Detroit where a conference was held with Mr. Bigge with one of his very close friends and a relative, the matter of his embezzlement was talked over at length by another witness who will testify in this case. They were going over various items of this embezzlement and the amount, and what Charles had done with the money, and this person, his brother-in-law in fact, said to this witness who will testify, 'What's the use of going over this matter again. Charles is guilty as hell.'

"*Mr. Sigler* (attorney for defendant): I object to that as being improper unless Charles G. Bigge was present.

"*Mr. Campbell* (special prosecuting attorney): I haven't finished. Charles Bigge could have said right there if it wasn't true. It was his duty to have said so."

Defendant reviews by appeal in the nature of a writ of error.

1. The right to trial by jury in criminal cases was established at common law. The most pointed objection to the adoption of the Federal Constitution was that it did not guarantee trial by jury. By tacit agreement, it was adopted with the promise

that appropriate amendments would be submitted as soon as the government thereunder was organized, and the sixth amendment guaranteed the right of trial by an impartial jury. The Ordinance of 1787, art. 2, had guaranteed judicial proceedings "according to the course of the common law" which included the right of trial by jury. The Michigan Constitution of 1835 provided "the right of trial by jury shall remain inviolate." Const. 1835, art. 1, § 9. During the period from 1840 to 1850, there was much agitation for a change in legal practice. It was seriously argued that juries should be abolished, that pleadings should be verbal instead of written, that we should have inquisitorial in place of controversial procedure, that we should abolish the common law and adopt the civil law. It was argued that the law governing legal proceedings sprang from the legislation and usages of corrupt monarchies, that it was fit only for slaves, was an heirloom of barbarism, and that something should be done more in the interest of the genius of republicanism and in accord with the enlightened spirit of the age. House Document No. 23, 1844; Senate Documents 1845–1848. This agitation had its influence, but the Constitution of 1850 provided "the right of trial by jury shall remain." Const. 1850, art. 6, § 27. But, in obedience to popular clamor, it was provided the legislature might authorize a trial by a jury of less than 12 men. Const. 1850, art. 4, § 46. The Constitution of 1908 provided "the right of trial by jury shall remain" (Const. 1908, art. 2, § 13), though the legislature was authorized to provide for a jury of less than 12 in courts not of record (Const. 1908, art. 2, § 19). In addition to the guarantee of right of trial by jury, the Constitution fixed certain common-law incidents,

and among these was the right of the defendant to be confronted with the witnesses against him. Const. 1908, art. 2, § 19. This court construed the language of the Constitution of 1850 that "the right of trial by jury shall remain but shall be deemed to be waived in all civil cases unless demanded by one of the parties in such manner as shall be prescribed by law" (Const. 1850, art. 6, § 27), and held that the right which is to remain is the right as it existed before the adoption of the Constitution of 1850— the right to a trial by jury as it had become known to the previous jurisprudence of the State; that nothing is better settled on the authorities than that the legislature cannot take away a single one of the substantial and beneficial incidents of the right of trial by jury as it existed and was adopted by the Constitution. *Swart* v. *Kimball,* 43 Mich. 443.

The right of confrontation carried with it the right of cross-examination. There never was any practice which deprived parties of the right to cross-examine witnesses. *DeWitt* v. *Prescott,* 51 Mich. 298. It is the test of the knowledge, as well as the veracity, of witnesses. *O'Donnell* v. *Segar,* 25 Mich. 367. The benefit of cross-examination is an essential condition to the reception of direct testimony. *Heath* v. *Waters,* 40 Mich. 457. In order to render testimony admissible, it must appear the party against whom it is to be used had an opportunity to cross-examine. *Sperry* v. *Moore's Estate,* 42 Mich. 353. So strict has been the rule that if a witness dies after direct examination and before cross-examination all the testimony of such witness is excluded. *Sperry* v. *Moore's Estate, supra.*

In the trial of jury cases, facts are to be laid before the jury by testimony. Witnesses must be under oath. No one has a right to place unsworn statements in relation to material facts before the

jury. In this case, the statement made to the jury, over defendant's objection, that after the alleged offense defendant's brother-in-law said, in defendant's presence, "Charles is guilty as hell," if considered as testimony against defendant's objection, would have been error (1) because entirely hearsay; (2) not a part of the *res gestæ;* and (3) not made under such circumstances as would amount to an implied admission upon the part of defendant. It is gravely said that if, to all these reasons for the exclusion of such a statement, there be added (4) that the statement be made without the sanctity of an oath, its admission is harmless error notwithstanding defendant's objection. The statement was not a part of argument. The opening statement of counsel may not be argumentative. Counsel, in his opening statement, had no right to make a statement which was objectionable. Such statement deprived the defendant of the right to a fair and impartial trial. It was made to convince the jury of defendant's guilt. Such statement of fact was lodged in the jurors' minds not through the channel which the law has provided for the conveyance of evidence or at the stage of proceeding proper for submitting evidence. The statement was one which could not fail, when so presented, to prepossess the jury unfavorably against defendant. *Scripps* v. *Reilly,* 35 Mich. 371 (24 Am. Rep. 575). Counsel ought not to make statements in the presence of the jury in relation to facts which are incompetent to be proved. *Scripps* v. *Reilly, supra; Phillips* v. *U. S. Benevolent Society,* 120 Mich. 142. Irrelevant matter ought not to be brought before a jury by counsel either in an opening statement or a closing argument. *Hirshfield* v. *Waldron,* 83 Mich. 116. If done, it not only deserves censure, but calls upon this court to make sure the statement of improper matters before the

jury did not result in a miscarriage of justice. *Kerr v. National Fulton Brass Manfg. Co.,* 155 Mich. 191.

"If counsel possesses any information in relation to the facts which he thinks should get to the jury, he should be sworn as a witness and subject himself to the rules governing the taking of testimony." *Clark* v. *Ulrich,* 153 Mich. 695, 719.

The harm is done when the improper statements are made. *Rice* v. *Warner Hotel Co.,* 187 Ill. App. 317; *Holman* v. *Cole,* 242 Mich. 402.

"If counsel, well learned in the law, choose to deliberately imperil the interests of their clients by improper advertisement of a fact well known to be prejudicial to a fair and impartial consideration of the case by the jury, the resulting judgment should be set aside, even though the party who suffers is the innocent client instead of offending counsel." *Grubaugh* v. *Simon J. Murphy Co.,* 209 Mich. 551.

2.  It is argued that this statement was made in good faith, and the good faith of counsel is sufficient to authorize this court to overlook it. It makes no difference whether the statement was made in good faith or bad faith. The result to the defendant was the same in either case. Even though counsel for plaintiff acted in good faith, he succeeded in placing before the jury a prejudicial statement, unwarranted by the orderly procedure of criminal trials, in lodging in the minds of the jury before any testimony was admitted substantially that defendant had acquiesced in the truthfulness of a charge of guilt. I know of no statement which could have been more prejudicial to a fair and impartial trial than the one made.

3.  It is contended this statement could have been supported by testimony; that it was fairly within the

rule of *People* v. *Todaro,* 253 Mich. 367.   In the
*Todaro Case,* defendants were convicted of robbery
armed at a house of prostitution and cabaret in
Ecorse.   The patrons and inmates present were
lined up and compelled to deposit their money and
jewelry upon a table.   Several persons participated
in the robbery.   There was testimony tending to
show defendant went there with the others who were
prosecuted and convicted.   When the holdup began,
the police were notified and immediately responded,
reaching the place before the money and jewelry had
been gathered up by the thieves.   Defendant Todaro
was there and there was testimony that when the
police came he left the room where the holdup was
in progress, ran into the lavatory and hid behind
a door, leaving his pistol upon the washboard of a
sink past which he went after the holdup and before
he was arrested.   One of the police officers saw him
behind the door and brought him out and someone
present said ''That is one of them,'' and, acting
upon this identification, defendant was arrested.
It was insisted in defense that the statement by a
bystander, ''That is one of them,'' was not admis-
sible in evidence.   This court said it was for the
jury to say whether the statement was made in the
presence and hearing of the accused under such
circumstances that his acquiescence therein could be
inferred from his conduct and demeanor and failure
to reply or respond thereto.   This testimony was ad-
missible as a statement made in the presence and
hearing of the defendant, to which he made no re-
ply, because (1) it was an identification of defend-
ant as one of the robbers, upon which identification
he was then and there arrested by the police, and
(2) it was clearly admissible as a part of the *res
gestæ.*

In that case, the court cited *Dawson* v. *Hall,* 2 Mich. 390; *People* v. *Courtney,* 178 Mich. 137; and other authorities.

In *People* v. *Courtney, supra,* this court quoted with approval the language of *People* v. *O'Brien,* 68 Mich. 468, and of 2 Wigmore on Evidence (2d Ed.), p. 556 *et seq.,* § 1072; 1 Greenleaf on Evidence (16th Ed.), p. 330 *et seq.,* §§ 197, 199; 2 Wharton's Criminal Evidence (10th Ed.), p. 1403 *et seq.,* § 679; *Davis* v. *State,* 131 Ala. 10 (31 South. 569); *People* v. *Smith,* 172 N. Y. 210 (64 N. E. 814); *Commonwealth* v. *Walker,* 13 Allen (95 Mass.), 570; *Fry* v. *Stowers,* 92 Va. 13 (22 S. E. 500), but pointed out that the statements alleged to have been made and sought to be introduced in that case were not admissible.

There is nothing in the rule of *People* v. *Todaro, supra,* which warranted the making of this statement.

4. It is sought to uphold the conviction of defendant under the authority of 3 Comp. Laws 1929, § 17354 (Stat. Ann. § 28.1096). By this statute, it is provided that criminal cases shall not be reversed for errors on the trial unless, in the opinion of this court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice.

Juries are the sole judges of the credibility of the witnesses and the truthfulness of their statements. They are the tribunal specified by the Constitution to determine the guilt or innocence of the defendant. This statute in effect commands this court, in case there has been a criminal trial and erroneous conviction of the defendant, to reexamine the entire case upon the facts. It places the burden upon the defendant to show there has been a mis-

carriage of justice, rather than placing the burden upon the people to show that the defendant has been properly convicted. It seeks to rebut the presumption of prejudice from error. If a criminal case is properly tried and properly submitted to a jury, defendant has a trial by jury as guaranteed by the Constitution and laws of the State. If he has not had such a trial, the case should be reversed and remanded in order that he may have such trial.

Criminal cases are reviewed by writ of error; and a writ of error, under our Constitution, is an original writ.

"The writ of error only lies upon matter of *law* arising upon the face of the proceedings; so that no evidence is required to substantiate or support it; and there is no method of reversing an error in the determination of *facts,* but by an attaint, or a new trial, to correct the mistakes of the former verdict." 3 Blackstone's Commentaries (8th Ed.), chap. 25, p. 406.

"The right of trial by jury is secured by constitutional provisions, and it would not be competent to make any substantial changes in its character." *Underwood* v. *People,* 32 Mich. 1 (20 Am. Rep. 633).

"The right of trial by jury remains as it existed at the time of the adoption of the Constitution and was known to the previous jurisprudence of this State. The incidents of such trial, which were so known and recognized, which are essential to the enjoyment of the right, * * * cannot be impaired or destroyed without violating this constitutional provision." *People* v. *Harding,* 53 Mich. 48 (51 Am. Rep. 95).

The limit of this court's authority in the review of criminal cases by writ of error is to determine whether error has been committed on the trial. If

defendant has not had a fair trial by an impartial jury, the conviction should be reversed and the case remanded for a new trial. This court has no authority to pass upon the facts. The legislative command to this court to examine the entire cause and pass upon the facts is a legislative mandate to exercise appellate jurisdiction, unwarranted by the Constitution and in direct violation of its command. The jurisdiction of this court to review criminal cases by writ of error is original. It has no appellate jurisdiction in cases where by the Constitution its jurisdiction is original, and no original jurisdiction in cases where by the Constitution its jurisdiction is appellate.

This statute commands this court to disregard the constitutional limits of its authority, is a legislative attempt to destroy the constitutional safeguards of individual liberty, and to confer on this court jurisdiction denied by the Constitution. It is void.

Prejudicial error is shown by the record. Defendant did not have a fair trial. Damaging facts were placed before the jury prior to the introduction of any testimony. Such procedure was over defendant's objection. Thereafter, the jury could not well have been impartial. These damaging facts were not supported by proof. Such proof was incompetent. The statements were not made under oath. Such statements stand upon the record, unwarranted by procedure and unsupported by proof. Defendant did not have a judicial trial, but a prejudicial trial. No appellate jurisdiction, no power and authority to pass upon the facts in criminal cases could be conferred on this court by the statute cited and relied upon. The guilt or innocence of the accused was a question for a jury. This court is concerned with the question, whether defendant had a

fair trial by an impartial jury. It is self-evident defendant has not had such a trial. The constitutional safeguards of such a trial were flagrantly disregarded. If defendant, on arraignment upon the information filed against him, had pleaded guilty in the circuit court and subsequently changed his plea and gone to trial, his plea of guilty would have had greater evidentiary value than his alleged admission by silence. Had he pleaded guilty and then changed his plea, the people could not upon the trial of the case have introduced in evidence, as an admission binding on him, his former plea of guilty. 16 C. J. p. 1254; 8 R. C. L. p. 112; 2 Wharton's Criminal Evidence (10th Ed.), p. 1323 *et seq.,* § 638; 12 Cyc. p. 426; 2 Enc. Pl. & Pr. p. 779; *People* v. *Ryan,* 82 Cal. 617 (23 Pac. 121); *Kercheval* v. *United States,* 274 U. S. 220 (47 Sup. Ct. 582). As said in the last case:

"The withdrawal of a plea of guilty is a poor privilege, if, notwithstanding its withdrawal, it may be used in evidence under the plea of not guilty."

The statement of the assistant prosecuting attorney above-quoted was just as prejudicial to defendant as testimony of the former plea of guilty would have been on the trial of the case if he had pleaded guilty and then changed his plea.

Defendant's conviction is reversed and the cause remanded.

McALLISTER, J. (*dissenting*). Defendant appeals from a conviction for embezzlement.

It is claimed that the following portion of the opening statement of the prosecutor constituted reversible error:

"On the 1st day of May, 1937, in Detroit where a conference was held with Mr. Bigge with one of his

very close friends and a relative, the matter of his
embezzlement was talked over at length by another
witness who will testify in this case. They were
going over various items of this embezzlement and
the amount, and what Charles had done with the
money, and this person, his brother-in-law in fact,
said to this witness who will testify, 'What's the
use of going over this matter again. Charles is
guilty as hell.' "

When this statement was made, counsel for de-
fendant objected to it "as being improper unless
Charles Bigge was present." Upon this objection,
the prosecutor stated: "I haven't finished. Charles
Bigge could have said right there if it wasn't true.
It was his duty to have said so."

No further statement of the grounds of objection
was made. On the trial, and at a time when the
jury was absent, the court asked the prosecutor what
he intended to prove by a certain witness. In answer
to this inquiry the prosecutor proceeded to examine
the witness in question as to the alleged statement
made by defendant's brother-in-law. The court then
decided that such evidence should be excluded. All
of this was in the absence of the jury, and upon the
court's ruling, the jury was recalled and nothing
further said about the matter in their presence.

After conviction, defendant made a motion for
new trial, and for the first time raised the question
that the above opening statement was prejudicial.
The court stated that no request to charge the jury
on the point was made, found that the statement
was made in good faith, and denied the motion for a
new trial. At the time the statement was made, no
one considered it prejudicial. Counsel for defend-
ant objected on the specific ground that it would be
improper if defendant had not been present at the

time the statement was alleged to have been made. Apparently it was considered proper under the theory of an admission by silence in which defendant's acquiescence might be inferred. See *People* v. *Todaro,* 256 Mich. 427; the objection, however, was directed to the proposition that the statement would be inadmissible if it later appeared that it was subject to exclusion as hearsay.

In *People* v. *Prinz,* 148 Mich. 307, it was said:

"It was conceded at the argument that no exception was taken to the rulings of the trial judge now complained of, and no requests to charge upon the questions which it is now claimed should have been covered. The general rule in criminal as well as civil cases is that this court will, on review, consider only such questions as were presented for the consideration of the trial court."

See, also, *People* v. *Graney,* 91 Mich. 646; *People* v. *Richards,* 150 Mich. 434.

In *People* v. *Brott,* 163 Mich. 150, it is said:

"We adhere to the general rule that questions will not be reviewed unless raised in the court below, and brought here in accordance with the general practice, for to hold otherwise would enable defendants to raise most any question without exception. There is much good sense in the strictest rule upon this subject, and certainly to extend it beyond the exception mentioned  *  *  *  would be to put a premium upon a practice of treating a point as inconsequential, or conceded, and thereafter asking a reversal, upon the ground that it has been overlooked, thus allowing a defendant to have an 'anchor to the windward' in case he shall fail of acquittal on the merits. If it be admitted that this court has this power, and on occasion will exercise it, in a capital and even in other cases, it should

be done only when the record clearly shows that a manifest injustice has been done; but this should be held as in the nature of an act of grace, wherein the noncompliance of counsel with the rules of practice is overlooked, rather than a recognition of a defendant's right to disregard the rules and prac-- tice usually required to assure justice to the State in the prosecution of offenders.''

In *People* v. *Rosa,* 268 Mich. 462, it is said:

"Prejudicial remarks of counsel may be cured by proper and timely instructions. *People* v. *Lincourt,* 221 Mich. 674; *People* v. *Connors,* 251 Mich. 99. However, this court has repeatedly stated that errors will not be considered on review in the absence of objection to the prejudicial remark or comment, and that it is the duty of opposing counsel to seek and obtain a ruling of the trial judge. *People* v. *Goldberg,* 248 Mich. 553.''

With regard to the conduct of the prosecutor in attempting to prove similar acts as bearing upon the *quo animo* of defendant, as provided in 3 Comp. Laws 1929, § 17320 (Stat. Ann. § 28.1050), and the rulings of the court thereon, I am in accord with Mr. Justice WIEST that there was no error.

I do not see how the question of deprivation of a fair trial is presented in this case, where the conduct of the prosecutor was acquiesced in by defendant. 3 Comp. Laws 1929, § 17354 (Stat. Ann. § 28.1096), does not prevent an accused from having a fair trial. It is only where a fair trial has been had that the statute may be invoked. In such a case, it could not be held unconstitutional as denying a fair trial.

In *Sunderland* v. *United States* (C. C. A.), 19 Fed. (2d) 202, 216, a fair trial is defined as follows:

"The term 'fair trial' is often used, but not often defined. It is of broad scope. While we shall not undertake to give a formal definition of the term, yet it may not be amiss to mention, in part at least, its content. It means a trial conducted in all material things in substantial conformity to law. \* \* \*

"It consists not only in an observance of the naked forms of law, but in a recognition and just appreciation of its principles \* \* \* It means a trial before an impartial judge, an impartial jury, and in an atmosphere of judicial calm \* \* \* Being impartial means being indifferent as between the parties \* \* \* It means that the acts and language of the prosecuting attorney are subject to control; that his duty consists, not in securing conviction at all hazards, but in ascertaining the truth \* \* \* It means that the defendant shall have a fair opportunity through his counsel to outline his defense to the jury. It means that the right of cross-examination shall be respected \* \* \* It means that, while the judge may and should direct and control the proceedings, and may exercise his right to comment on the evidence, yet he may not extend his activities so far as to become in effect either an assisting prosecutor or a thirteenth juror \* \* \* It means that, if evidence of good character of the defendant is introduced, an adequate instruction to the jury shall be given touching the probative value of such evidence.''

In *State* v. *Rush,* 108 W. Va. 254 (150 S. E. 740), it was said:

"The accused was, of course, entitled to a fair trial. But the term 'fair trial' does not imply a perfect trial. A trial without prejudice to the accused is a fair one. And because a perfect trial is rarely, if ever possible, necessity and common sense have evoked the rule of 'harmless error,' as to error which does not prejudice.''

The claim that the statement was prejudicial and resulted in reversible error is without merit. It was raised too late to save the question for review. No objection on the ground of prejudice was made on the trial before verdict; there was no motion for mistrial; and no requested charge on the matter complained of was proffered. The objection was not called to the attention of the court during the trial for the obvious reason that it was not considered prejudicial; and it now appears only as an after-thought. Convictions in criminal cases should not be rendered abortive by technicalities.

Judgment should be affirmed.

Butzel, C. J., did not sit.