# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ALEX DAMON WATKINS,

Defendant-Appellant.

UNPUBLISHED
August 16, 2018

No. 338211
Washtenaw Circuit Court
LC No. 16-000848-FH

Before: MURPHY, P.J., and GLEICHER and LETICA, JJ.

PER CURIAM.

Alex Damon Watkins appeals by right his jury convictions of two counts of fourth-degree criminal sexual conduct, MCL 750.520e(1)(b). Finding no error, we affirm.

This matter arises from the victim's allegations that Watkins sexually assaulted her in the workplace. Watkins was a union employee who worked as a kitchen cleaner in a dormitory dining hall on the University of Michigan campus. The victim, the operations manager at the dining hall, was one of his supervisors. At trial, the victim testified that Watkins asked for her telephone number several times in the months preceding the assault, and she consistently declined and informed Watkins that his requests were inappropriate. With respect to the events surrounding the assault, the victim testified that Watkins came to her office on a Friday morning to ask for permission to leave early that day. Watkins also told the victim that it was his birthday and asked for a "birthday hug." The victim hugged Watkins and he left her office. About 15 minutes later, Watkins was in a janitorial closet and waved the victim over. She entered the closet and stood with her back to the open doorway. Without saying anything, Watkins hugged her again and grabbed her buttocks. When she turned away from him, he grabbed her breasts with both hands, after which she left the closet. Before leaving for the day, Watkins approached the victim in her office and handed her a piece of paper with his name and telephone number written on it.

The victim spoke with her supervisor and a human resource manager later that day, disclosing only that Watkins had asked for her telephone number and asked her to call him. She did not disclose anything that happened in the closet, and her supervisor said he would "follow up about it." The victim told her roommate about the assault that evening, and also disclosed the incident to a friend the next day. After speaking with them, the victim decided to tell her supervisor what had happened. When they met the following week, the victim disclosed what

-1-

had occurred in the closet. The victim's supervisor consulted with the human resources department and the incident was reported to the police.

At trial, defense counsel presented Watkins as a hard-working, family man who was unfairly targeted by the dining hall management and repeatedly subjected to false accusations. In response to this harassment, Watkins would file grievances against his supervisors, which led to further harassment from management, ultimately culminating in the victim's false allegations against him. During her cross-examination of the prosecution's witnesses, defense counsel attacked the time line of the victim's "story" and disclosures, while also eliciting testimony about Watkins's difficulties with several members of the management team, including the victim's supervisor. Defense counsel also called two of Watkins's coworkers, who both indicated that they had never seen Watkins act inappropriately toward coworkers, supervisors, or students; that Watkins was a good employee; and that Watkins was scrutinized and harassed more than other employees.

Watkins argues on appeal that defense counsel was ineffective. Generally, a claim of ineffective assistance of counsel is a mixed question of fact and constitutional law. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). This Court reviews the trial court's findings of fact for clear error and questions of constitutional law under a de novo standard. *Id*. However, although Watkins preserved the issue by filing a motion for new trial, see *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009), the trial court denied the motion. Because a *Ginther*[1] hearing was never held, review is limited to mistakes apparent on the record. *Id*.

In order to find merit in a defendant's claim of ineffective assistance of counsel, the defendant must prove: (1) that the attorney made an error, and (2) that the error was prejudicial to the defendant. *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v LeBlanc*, 465 Mich 575, 578; 640 NW2d 246 (2002). That is, first, the defendant must show that trial counsel's performance fell below an objective standard of reasonableness. *People v Russell*, 297 Mich App 707, 715-716; 825 NW2d 623 (2012). The Court must analyze the issue with "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and the test requires that the defendant "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *LeBlanc*, 465 Mich at 578 (quotation marks and citation omitted). "Decisions regarding whether to call or question witnesses are presumed to be matters of trial strategy." *Russell*, 297 Mich App at 716. Failing to call a witness only rises to the level of ineffective assistance of counsel if it deprives the defendant of a substantial defense. *Id*. "Second, the defendant must show that, but for counsel's deficient performance, a different result would have been reasonably probable." *Id*. at 716 (quotation marks and citation omitted). However, "[f]ailing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

Watkins first argues that he was denied the effective assistance of counsel because counsel did not object to, or otherwise attempt to preclude, testimony from the victim's supervisor, roommate, and friend, in which they indicated that the victim told them about the assault. The victim's roommate and friend also testified that, in the months before the assault, the victim complained to them about Watkins's repeated requests for her phone number. The victim's supervisor recalled the victim previously reporting that Watkins had asked her to go to the gym and that she declined, saying it would be inappropriate. According to Watkins, counsel should have objected to this evidence because it was hearsay and not admissible as a prior consistent statement under MRE 801(d)(1)(B).

A party offering a prior consistent statement under MRE 801(d)(1)(B) must meet the following four elements:

> (1) [T]he declarant must testify at trial and be subject to cross-examination; (2) there must be an express or implied charge of recent fabrication or improper influence or motive of the declarant's testimony; (3) the proponent must offer a prior consistent statement that is consistent with the declarant's challenged in-court testimony; and, (4) the prior consistent statement must be made prior to the time that the supposed motive to falsify arose. [*People v Jones*, 240 Mich App 704, 707; 613 NW2d 411 (2000) (quotation marks and citations omitted).]

According to Watkins, counsel's failure to object to admission of the victim's prior statements through the testimony of other witnesses was unreasonable because the statements were not made before the motive to fabricate—i.e., Watkins's repeated grievances against managers—arose. Watkins maintains that the trial was essentially a credibility contest, such that allowing inadmissible hearsay that corroborated the victim's story deprived him of the effective assistance of counsel. The prosecution, on the other hand, argues that any motivation the victim may have had to lie arose at the time of the assault, so the victim's earlier statements to her supervisor, roommate, and friend were all admissible under MRE 801(d)(1)(B); therefore, defense counsel was not ineffective for failing to make a futile objection.

With respect to the witnesses' testimony concerning the victim's disclosure of the assault, the challenged testimony does not fall within the scope of hearsay in the first place. Hearsay is defined as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Here, the victim's friend indicated that the victim told her "the whole story" the day after the assault; the victim's roommate testified that the victim talked to her about "what had happened at work"; and the victim's supervisor explained that, after the victim's initial partial disclosure, she told him at a subsequent meeting that "more had occurred." None of these vague statements repeated the content of the victim's out-of-court disclosure, nor were they offered as proof that the assault occurred. Instead, the challenged testimony was offered to show how each witness learned of the assault and to provide context for their observations of the victim's reaction and the advice they gave her thereafter. Because these statements were not hearsay, there was no basis for defense counsel to object to their admission and her failure to do so was not objectively unreasonable. *Russell*, 297 Mich App at 715; *Ericksen*, 288 Mich App at 201.

However, the witnesses also testified about more specific disclosures the victim made to them in the months before the assault. That is, they described instances in which the victim said that Watkins had asked for her phone number or asked her to go to the gym with him. The apparent purpose for this evidence was to demonstrate Watkins's history of inappropriate advances in order to rebut the suggestion that the victim fabricated the assault. Although these statements appear to raise hearsay concerns, resolution of Watkins's ineffective assistance claim does not require us to determine whether the statements were indeed admissible.

Even if we were to find that the statements did not qualify for admission under MRE 801(d)(1)(B), it does not follow that defense counsel's decision to allow the statements in evidence was objectively unreasonable. There is a strong presumption that counsel's decisions were a matter of trial strategy, *LeBlanc*, 465 Mich at 578, and Watkins has failed to overcome that presumption here. Defense counsel's theory of the case was that the management team was looking for a reason to terminate Watkins's employment in retaliation for his regular use of the grievance process and that the victim was lying about Watkins's conduct the entire time. The victim's prior statements about Watkins's assault and previous advances could be seen as part of the plan to falsely incriminate him; thus, counsel could have made a strategic decision to allow the challenged evidence because it dovetailed with her theory of the case. This inference is further supported when the evidence is considered alongside: (1) counsel's inquiries to the victim about why she waited so long to disclose Watkins's earlier advances, despite feeling "uncomfortable" for months and despite the University's zero-tolerance sexual harassment policy; and (2) counsel's contention, in closing argument, that the timing of the victim's disclosures to each of these witnesses and the police gave her further opportunities to develop her "story." While the defense theory was ultimately rejected by the jury, the mere fact that the chosen strategy was unsuccessful does not render counsel's strategic decisions objectively unreasonable, *People v Kevorkian*, 248 Mich App 373, 414-415; 639 NW2d 291 (2001), and Watkins has not met his burden of proving otherwise.

Watkins next argues that counsel was ineffective for failing to object to the investigating detective's testimony regarding his silence during a prearrest, voluntary interview. We disagree.

Watkins was not in police custody during the interview, and he does not raise a constitutional question in this issue, only an evidentiary question. When constitutional concerns do not apply, the admissibility of a defendant's silence depends on the ordinary rules of evidence. See *People v McReavy*, 436 Mich 197, 220; 462 NW2d 1 (1990); *People v Solmonson*, 261 Mich App 657, 665; 683 NW2d 761 (2004). Before the enactment of the Michigan Rules of Evidence, our Supreme Court held in *People v Bigge*, 288 Mich 417, 420; 285 NW 5 (1939), that a defendant's silence in response to another person's assertion of the defendant's guilt could not be offered as substantive evidence of the defendant's guilt. See *People v Hackett*, 460 Mich 202, 213; 596 NW2d 107 (1999). This limitation upon the use of tacit admissions was later incorporated in the Michigan Rules of Evidence. See *id*. In setting forth the type of evidence that may be offered as an admission of a party-opponent, MRE 801(d)(2)(B) allows admission of "a statement of which the party has manifested an adoption or belief in its truth . . . ." Together, the rule from "*Bigge*, as modified by MRE 801(d)(2)(B), precludes the admission of a defendant's silence in the face of an accusation as an adoptive or tacit admission unless the defendant has manifested his adoption of belief in its truth."

*Solmonson*, 261 Mich App at 664. However, evidence of a defendant's demeanor and nonresponse to statements during a police investigation is admissible to demonstrate consciousness of guilt. *Id*. at 667. See also *McReavy*, 436 Mich at 213-214 ("Unlike the *Bigge* adoptive admission preclusion, the relevancy of defendant's behavior in the instant case in neither denying nor admitting the direct inquiry rests not on a third party's assertion but on the admissions defendant himself made, answers which circumstantially indicated defendant's knowledge of and involvement in the robbery."). "The distinction between a tacit admission requiring the adoption of a 'statement' and nonresponsive conduct as evidence of consciousness of guilt is subtle but is one recognized by this Court and our Supreme Court." *Solmonson*, 261 Mich App at 666-667.

In *Solmonson*, the defendant was arrested after police officers found him unconscious in the driver's seat of a car that was parked on the side of the road, sleeping with a can of beer between his legs. *Id*. at 660. While performing field sobriety tests, the defendant said, " 'This is bullshit,' " and told the officers "to just take him to ' f---ing jail.' " *Id*. The defense theory was that someone else drove the defendant to the location where the police found him. *Id*. at 661. At trial, without objection, the police officers testified that the defendant never denied being the driver of the car. *Id*. at 660. On appeal, the defendant argued that he was denied the effective assistance of counsel because his attorney failed to object to the officer's statements, which violated the rule of *Bigge*. *Id*. at 664.

This Court concluded that neither the rule from *Bigge* nor MRE 801(d)(2)(B) were implicated in *Solmonson*. *Id*. at 665. After outlining the definition of a "statement" under MRE 801(a),[2] this Court stated:

> Here, there is no oral, written, or nonverbal conduct intended as an assertion that defendant adopted as his own statement. The police did not directly assert that defendant was the driver of the vehicle. Instead through their words and their conduct they advised that the defendant was being arrested for operating a vehicle while under the influence of intoxicating liquor. [*Id*. at 666.]

As such, this Court found that the officer's testimony indicating that the defendant never denied being the driver did not constitute improper evidence of a tacit admission. *Id*. at 666-667. Instead, the defendant's nonresponsive conduct, coupled with his belligerent comments during the administration of sobriety tests, was properly admitted as evidence of his consciousness of guilt. *Id*. at 667.

We find this case analogous to *Solmonson*. The investigating detective testified that Watkins spoke to her about various off-topic subjects, including his work duties, his opinion of the victim, his length of employment, and where he lived. The detective stated that when she "started talking about the specifics about what happened, then he didn't say a whole lot." According to the detective, Watkins "denied everything" and when she "[tried] to let him know

---

[2] For purposes of hearsay rules, a "statement" is "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." MRE 801(a).

that there's information that suggests otherwise, he just was very quiet and just sat there and didn't respond." Just as in *Solmonson*, we conclude that the evidence about the prearrest interview did not include "oral, written, or nonverbal conduct intended as an assertion," *id*. at 666, that Watkins could have adopted as his own statement by virtue of his silence. The record does not indicate that the detective made a statement to Watkins indicating his guilt. Rather, the detective merely informed Watkins of the allegations and that there was evidence that did not match his statement. Watkins's nonresponsive demeanor in this context, coupled with his cooperative discussion of other topics raised during the interview, was circumstantially indicative of his consciousness of guilt. *Id*. at 666-667. Accordingly, we conclude that the detective's testimony was not subject to the *Bigge* rule or MRE 801(d)(2)(B). Instead, the detective's testimony was admissible as evidence of consciousness of guilt. Because the detective's testimony was admissible, it would have been futile for defense counsel to object to it and we will not find defense counsel's performance ineffective for failing to do so. *Ericksen*, 288 Mich App at 201.

Watkins lastly argues that he was denied the effective assistance of counsel because defense counsel did not call two specific witnesses at trial. Watkins takes issue with defense counsel's failure to call two union stewards as witnesses, which he claims deprived him of a substantial defense. The defense that Watkins claims he was deprived of was that the victim's supervisor wanted to fire him, so the supervisor pressured the victim into fabricating the accusations against Watkins. We disagree.

First, defense counsel introduced this theory through her cross-examination of the victim and her supervisor. On cross-examination, the supervisor testified that he was aware that Watkins had professional and work issues with managers in the dining hall. He also admitted that there was tension between himself and Watkins. The supervisor admitted that several managers, including himself, accused Watkins of not being in his assigned work area and returning late from breaks. On cross-examination, the victim testified that she was aware that Watkins filed grievances against her colleagues. Defense counsel attempted to elicit testimony from the victim that she knew that other managers wanted to get Watkins fired. However, despite defense counsel's efforts, the victim denied knowing that information.

Second, although defense counsel did not call the two union stewards that Watkins preferred, defense counsel did call two of Watkins's coworkers as witnesses. The first defense witness testified that management unfairly "scrutinized" and "watched" Watkins. The second witness claimed that the victim and her supervisor harassed Watkins by watching him more closely than other employees. This witness further claimed that Watkins was never late returning from lunch breaks, which was in direct conflict with the supervisor's testimony. Furthermore, the witness knew that Watkins filed grievances against management, and she testified that the more grievances Watkins filed, the worse the harassment against him became.

We conclude that Watkins was able to present the defense that he desired. He was not deprived of a substantial defense by the absence of the two union stewards, because the witnesses defense counsel did call, as well as her cross-examination of the prosecution witnesses, adequately presented the desired defense to the jury. Because Watkins was not deprived of a

substantial defense, he was not deprived of the effective assistance of counsel. *Russell*, 297 Mich App at 716.

Affirmed.


/s/ William B. Murphy
/s/ Elizabeth L. Gleicher
/s/ Anica Letica