# STATE OF MICHIGAN

# COURT OF APPEALS

In re MORFORD/ELLISON-MORFORD, Minors.

UNPUBLISHED
December 22, 2016

No. 332541
Monroe Circuit Court
Family Division
LC No. 14-023167-NA

Before: SERVITTO, P.J., and STEPHENS and RONAYNE KRAUSE, JJ.

PER CURIAM.

Respondent mother appeals as of right the order terminating her parental rights to her minor children, AM and GE-M, pursuant to MCL 712A.19b(3)(c)(*i*), (*ii*) [conditions leading to adjudication continue to exist], MCL 712A.19b(3)(g) [failure to provide proper care and custody], and MCL 712A.19b(3)(j) [potential harm to children if returned to parent]. We affirm.

Respondent suffers from cerebral palsy, which causes her challenges in mobility, strength, and communication and necessitates a wheelchair. She is married to, but separated from, the biological father of the children, who released his parental rights to the children during the pendency of this proceeding. Respondent contends that petitioner, the Department of Health and Human Services (DHHS) did not provide her with meaningful, reasonable, and appropriate efforts at and services for reunification with the children; in particular, DHHS failed to make the requisite reasonable accommodations for her disabilities required by the Americans With Disabilities Act (ADA), 42 USC 12101 *et seq*. Respondent argues that termination of her parental rights therefore was, at least, premature. We find that although respondent might have been better served by additional or different efforts, the services and efforts provided by DHHS were reasonable in context and under the available circumstances.

Absent certain exceptional and inapplicable circumstances, termination of a parent's right to be a parent to their child may not be considered unless DHHS has made "reasonable efforts" to reunite the child and the parent and maintain the parent's care of the child. *In re Hicks/Brown*, ___ Mich App ___, ___; ___ NW2d ___ (2016) (Docket No. 328870); slip op at 6, app pending 499 Mich 982 (2016). Exactly how thorough and extensive those efforts must be to be considered "reasonable" is not defined, but it is established that "[t]he reasonableness of the efforts provided affects the sufficiency of the evidence supporting the grounds for termination." *Id*. Reasonableness must be evaluated strictly on a case-by-case basis and tailored to the particular parent and the nature of that parent's own unique disabilities and challenges. *Id*. at ___, slip op at 11. However, such efforts need not be infinite or extend to services that are

-1-

simply not available, and as with any other parent, the child's needs ultimately prevail if the parent cannot ultimately carry out a minimal range of parental responsibilities. See *In re Terry*, 240 Mich App 14, 27-28; 610 NW2d 563 (2000). We think it inescapable that the efforts to which a parent with disabilities is entitled be analogized to the trial to which a criminal defendant is entitled: fair, not necessarily perfect, which after all is an impossible standard. *People v Miller*, 482 Mich 540, 559; 759 NW2d 850 (2008); *People v Bigge*, 288 Mich 417, 435; 285 NW 5 (1939); *McDonough Power Equip, Inc v Greenwood*, 464 US 548, 553; 104 S Ct 845; 78 L Ed 2d 663 (1984).

More specifically to parents with cognitive challenges, reasonable efforts will generally recognize from the outset and thus plan for ongoing support and services in a connected or mutually dependent manner to address the needs of a respondent "rather than forcing a parent to demonstrate the ability to independently parent a child." *In re Hicks/Brown*, ___ Mich App at ___; slip op at 11. In other words, the coordination of available services to support a disabled parent is paramount. However, as noted, a balance must be struck between meeting the particular needs of the child and affording the parent functioning with a disability sufficient time to attain designated skills and demonstrate progress. *Id.* at ___; slip op at 12.

Clearly, respondent needed individualized and specialized services due to her physical, cognitive, and communication challenges. DHHS was aware of respondent's limitations based on their historical interactions and the provision of services to respondent even before the birth of her first child, as well as the completion of a psychological evaluation at the onset of the proceedings. There can be no dispute that DHHS provided extensive services involving counseling, parenting education, independent living services, infant mental health services, and innumerable others for respondent's participation. We would not take seriously any contention that DHHS provided *insufficient* efforts, per se, and indeed respondent makes no such allegation. Rather, respondent argues that the efforts by DHHS were *inappropriate*, insofar as they were simultaneously not particularly tailored to her particular needs and instead emphasized the volume of services irrespective of their relevance.

We think there is some merit to respondent's contentions. Respondent's counsel initially questioned the seemingly overwhelming list of services in which respondent was required to participate, to which DHHS simply responded that respondent "has time to take care of all those services." An occupational therapy evaluation occurred one year after the first child's removal from respondent's home, and it recommended adaptive equipment and alterations to respondent's apartment and the use of specialized child care equipment, none of which were apparently pursued. Respondent's difficulties with speech were acknowledged, but they were not targeted, and alternative methods to obtain the verbal stimulation needed by the children were not explored. We find DHHS's concerns about respondent's parents serving as respondent's only support system reasonable considering the parents' chaotic past and a variety of accusations that had been made against them; likewise DHHS's characterization of respondent's frequent movement between her parents' home and her own apartment as unstable and inconsistent. However, respondent and her parents did follow the recommendation by DHHS of participating in family therapy, and asserted that they attained a better level of communication and more respectful relationship; DHHS apparently never regarded respondent's parents as even possibly serving as an adequate support system.

DHHS indicated that accommodations for respondent included: (a) the provision of a mat for her use during visitation to allow respondent to be on the floor without significant discomfort, (b) a playpen for use to help monitor one child when respondent was occupied with her other son, (c) a changing pad to use on the floor for diapering, (d) the movement of objects in the room for visitation to permit better wheelchair accessibility and (e) the extended duration of individual visitation sessions, but with no overall increase in the total amount of time afforded to respondent with her children. This seems inadequate given the respondent's identified needs. Although recognizing respondent's need for accommodations due to her physical limitations, there appear to be no consideration for the cognitive deficiencies documented for respondent in the provision of services. Indeed, two individuals, including the occupational therapist, opined that Wrap Around Services were confusing. Numerous service providers described respondent as difficult to work with and resistive to instruction, but the evidence suggests that this may not have been entirely respondent's own fault.

Nevertheless, respondent provides little more than speculation that more appropriate services in fact existed or that respondent would have benefited from them if they did. For example, respondent contends that she benefited from working with Jill Caruso, but Caruso indicated that no additional or different services were then available at her agency to assist respondent. Respondent complains that DHHS made no efforts to search for potential relatives or friends other than respondent's parents, but offers no argument to suggest that any other relatives or friends existed or could have been found. Furthermore, respondent's emphasis on DHHS's concern with "what *she* must do to earn her children back" only goes so far. "While the [DHHS] has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Laster*, 303 Mich App 485, 495; 845 NW2d 540 (2013) (citation omitted). A parent's rights necessarily must be balanced against the needs of the child; if the parent simply cannot be remediated to the point of being able to safely and competently care for the child within a reasonable time, DHHS is not obligated to keep trying forever while the child languishes. *In re Hicks/Brown*, ___ Mich App at ___, slip op at 16.

Realistically, despite the provision of specialized services coupled with an adaptation of their method of delivery, it is highly unlikely that respondent will be capable of demonstrating that she can effectively parent her children and assure their safety. In reaching its decision to terminate respondent's parental rights, the trial court reviewed evidence and testimony pertaining to the services provided to respondent and her response to those services. In reviewing the psychological evaluations done with respondent, concerns were noted regarding her distractibility and short attention span, in addition to impairments in her logical reasoning and social judgment. Respondent's variable, complex and difficult relationship with her parents was juxtaposed against respondent's identification of her parents as her support system in conjunction with her concurrent denial of her need for assistance in parenting. The psychological evaluator opined that respondent's "current psychological adjustment appears to be unstable," and that her relationship with the children was focused on her needs rather than theirs ("While she maintained that she loves her children and wants to regain custody of them, it is noted that she stated she wanted children 'so I would feel loved.'"). While the content of the independent psychological evaluation completed at respondent's behest was somewhat less vociferous regarding her deficiencies and future parenting potential, it too noted concerns pertaining to her "[f]alse beliefs

related to independent infant childcare," and the lack of "realistic expectations or plan regarding her infant sons' safety and care decisions."

The trial court discussed respondent's prolonged history with both Child Protective Services (CPS) and Adult Protective Services (APS), with respondent having been the recipient of services since 2006 and the lack of compliance or follow through by respondent. Despite the provision of services, the trial court noted ongoing concerns throughout the proceedings with respondent's ability to demonstrate or maintain adequate hygiene or the cleanliness of her environment and the absence of routine compliance with safety regimens, coupled with concerns pertaining to her financial and housing stability. Despite the provision of services preceding the initiation of these petitions, evidence was adduced that respondent continued to struggle with her ability to provide basic care for the minor children or to successfully attend to both children's divergent needs simultaneously, which raised credible safety concerns. Although respondent's love for her children was undisputed, descriptions of the children's reactions when with respondent indicated the lack of reciprocity of any bond or deep affection on their part. In addition, respondent often failed to recognize physical cues by the children indicating a routine want or need such as hunger, as well as resistance to evaluating the children and providing services to them to address concerns such as the delayed development of verbal communication skills.

In a related discussion, the trial court expressed concern regarding respondent's frequently obstreperous behavior and resistance to recommendations provided during training sessions. A specific issue noted by the trial court was respondent's inability to modulate her response by yelling when disagreements arose rather than engaging in a discussion. Respondent's compliance in signing requested releases was variable. Although respondent acknowledged her need for assistance in completing tasks with the children she would concurrently complain and indicate resentment with the level or degree of assistance provided. Respondent routinely demonstrated poor judgment in identifying people only recently met as viable support systems for her despite having little knowledge of their backgrounds or abilities, which resulted on more than one occasion with respondent being unduly taken advantage of by these individuals. Similarly, her relationship with her parents was frequently chaotic punctuated by brief periods of amiability. She has resided intermittently with her parents with varying levels of success at achieving and maintaining peaceful cohabitation, resulting in reasonable concerns pertaining to the viability of the maternal grandparents functioning as respondent's primary support system on a prolonged basis, compounded by their ages and own history of neglectful or violent conduct. The absence of any alternative relatives for placement significantly limited the options available for the minor children.

The trial court found respondent to often be incredible given inconsistencies in her recognition of the need for assistance juxtaposed with assertions of her ability to function independently. Ultimately, the trial court found that the services provided to respondent and the minor children "have exceeded what is reasonable; attempts have been made and opportunities have been offered to benefit the mother in every facet of living, time and time again, even when services have been refused by her and re-offered to her, even pre-dating the Petition." The trial court noted respondent's lack of cooperation in submitting "financial proofs" deemed relevant "to determine how she would ever provide the children with a stable and independent home, with working utilities/food." The trial court characterized respondent as being offered and provided a

variety of services, yet "refus[ing] to accept support and services provided to her to eliminate the barriers to reunification." The trial court expressed doubt that the progress demonstrated by the children while in foster care could be maintained or continued if they were returned to respondent based on respondent's resistance or refusal to engage in recommended "parenting techniques," her "disavowal of special needs and alternative education, and [the] inability to provide for basic health/safety/hygiene needs."

Hence, while additional or different efforts could have occurred regarding the provision of services to respondent, it cannot be determined that the services that were provided did not comprise a reasonable effort to attain the initial goal of reunification. Reasonable efforts cannot be equated to perfect or all-encompassing efforts. In reality, the options and services that are available are constricted and cannot possibly address every possible need that may arise for a particular parent. While the efforts at reunification undertaken in this matter were imperfect, the trial court correctly concluded that reasonable efforts had been expended by DHHS in seeking to achieve reunification of respondent and the minor children.

Respondent next contends the trial court erred in finding the statutory grounds of MCL 712A.19b(3)(c) were established and justified the termination of her parental rights. Respondent argues that the conditions that led to the adjudication had been addressed as domestic violence was no longer an issue given her prolonged physical separation from her husband and the improvement in the strained relationship between respondent and her parents. Termination was also not justified under MCL 712a.19b(3)(g) and (j) given respondent's progress on her case service plan and improvement in numerous areas of alleged deficiency. The failure to provide reasonable assistance and accommodations impeded respondent's progress on the referenced goals. Respondent challenges the failure of DHHS to permit and facilitate the use of her parents as a support system to provide respondent with the assistance necessary to parent her children.

"To terminate parental rights, a trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). "This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination. The trial court's factual findings are clearly erroneous if the evidence supports them, but we are definitely and firmly convinced that it made a mistake." *In re White*, 303 Mich App 701, 709-710; 846 NW2d 61 (2014). "[T]his Court accords deference to the special opportunity of the trial court to judge the credibility of the witnesses." *In re Fried*, 266 Mich App 535, 541; 702 NW2d 192 (2005); MCR 2.613(C). "Whether the ADA has any effect on termination of parental rights proceedings . . . presents a question of law that [this Court] review[s] de novo." *In re Terry*, 240 Mich App at 23-24.

To properly preserve an issue for appellate review, a parent must raise the issue before the trial court. *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). Respondent failed to challenge the statutory grounds cited by the trial court in support of termination of her parental rights, the issue is not properly preserved for appellate review. The review of unpreserved issues is "limited to determining whether a plain error occurred that affected substantial rights." *In re Egbert R Smith Trust*, 274 Mich App 283, 285; 731 NW2d 810 (2007), aff'd 480 Mich 19 (2008).

In accordance with MCL 712A.19b(3)(c)(*i*), a trial court may terminate parental rights if "[t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." MCL 712A.19b(3)(c)(*ii*) further provides:

> Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

The trial court deemed "both prongs" of MCL 712A.19b(3)(c) to have been established as evidenced by "numerous past CPS referrals against her, domestic violence in her home, inability to provide safe housing, inability to have proper supports, lack of parent-child bond, and multiple services having been provided to her in order for her to keep the children in the home." The trial court further explained:

> While Respondent Mother has maintained an apartment for several months and while the imminence of trial has quelled the tension between her and her parents, she has not provided a safe/healthy/sanitary home, improved the parent-child bond, sustained viable supports nor benefitted from a multitude of services provided to her throughout the years. She does not have the psychological wherewithal, means or ability to provide permanence and stability to her children, even though this court believes she has a love/affection for them. Respondent mother either refuses or cannot accept suggestions for improving her parenting, bond or tending to the special needs of both of her children. Barriers to reunification have been and continue to be hygiene, supervision/circumspection, bonding, attending to the children's basic and special needs, maintaining wheelchair safety, yelling at her family and other helpers, maintaining financial stability, and taking care of herself.

Respondent correctly points out that one of the issues that led to the adjudication, the incidence of domestic violence involving herself and her husband, was rectified by his voluntary removal from the family unit. Furthermore, being a victim of domestic violence is not a permissible basis for termination of parental rights in any event. *In re Plump*, 294 Mich App 270, 273; 817 NW2d 119 (2011). However, the remaining concerns involving respondent's ability to provide a safe and functional home for the children and to satisfactorily meet their basic daily needs have not been eliminated despite the significant lapse of time since removal of the children from respondent's care. As such, evidentiary support establishing the statutory grounds for termination of respondent's parental rights under MCL 712A.19b(3)(c) exists.

Although only one statutory ground for termination must be proven by clear and convincing evidence to terminate parental rights, MCL 712A.19b(3); *In re Ellis*, 294 Mich App at 32 ("Only one statutory ground need be established . . . even if the court erroneously found sufficient evidence under other statutory grounds."), the remaining statutory provisions cited by the trial court to justify termination of respondent's parental rights will be addressed.

The trial court also found termination of respondent's parental rights was justified pursuant to MCL 712A.19b(3)(g), which provides:

> The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

The trial court found respondent to be "emotionally/psychologically unstable" based on evaluations conducted and in conjunction with her behavior, which included verbal outbursts and arguments with service providers, friends and family members. As such, the trial court found, "[w]ithout regard to intent, the Respondent Mother does not have the capacity to provide proper care and custody even with assistance." In support of its finding the trial court again referenced respondent's: (a) failure to provide a safe and clean residence for the minor children, (b) the lack of a demonstrable bond or improvement in the parent-child bond, (c) the absence or maintenance of a viable support system, and (d) the failure to demonstrate a tangible benefit from the services provided over a prolonged time period. Despite her love for the children, the trial court believed respondent lacked the psychological and emotional stability necessary to parent the children and provide them with permanence. Of concern to the trial court was respondent's resistance to or outright rejection of various suggestions to assist in the improvement of her parental skills.

Specifically, the trial court identified the ongoing "[b]arriers to reunification" to include issues pertaining to "hygiene, supervision/circumspection, bonding, attending to the children's basic and special needs, maintaining wheelchair safety, yelling at her family and other helpers, maintaining financial stability, and taking care of herself." The trial court concluded that despite the time provided to correct the various deficiencies and concerns, respondent had not and was not capable of demonstrating sufficient improvement in her abilities within the foreseeable future to warrant a further delay in terminating her parental rights. Even with the provision of various services and assistance to respondent, the trial court found that "the children have been harmed and their health and safety needs placed in jeopardy." As such, the trial court did not err in finding the statutory grounds of MCL 712A.19b(3)(g) had been established.

Finally, the trial court also justified the termination of respondent's parental rights under MCL 712A.19b(3)(j), which states: "There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." The trial court explained its finding on this statutory ground as follows:

> [T]here is no evidence to suggest the reasonable likelihood of permanence being afforded [the children] by Respondent Mother. Most significant is the reasonable likelihood of harm to the children if returned to Respondent's care considering her lack of parenting ability and emotional/psychological issues which this court firmly believes will not achieve permanency with Respondent and the children any time soon.

The trial court further cited to the emotional bond that had been established between the children and foster family, suggesting any dissolution of that bond "would result in serious emotional harm to them both." The trial court reiterated its various findings under the alternative statutory provisions cited in its substantiation of the decision to terminate respondent's parental rights. As

such, the statutory grounds for termination of respondent's parental rights were established under MCL 712A.19b(3)(j).

Affirmed.

/s/ Deborah A. Servitto
/s/ Cynthia Diane Stephens
/s/ Amy Ronayne Krause